PEOPLES BANK OF BLOOMINGTON, Special Adm'r of the Estate of John D. Taylor, Deceased, Plaintiff-Appellant, v. BASHKAR RAO DAMERA, Defendant-Appellee.

Fourth District   No. 4—91—0181

Opinion filed October 31, 1991.

W. Loren Thomson, of Thomson & Weintraub, of Bloomington, for appellant.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, Paul C. Estes, and Terrence K. McGrath, of counsel), for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiff, Peoples Bank of Bloomington, Illinois, as special administrator of the estate of John D. Taylor, sued defendant, Bashkar Rao

Damera, M.D., a psychiatrist, for medical malpractice. A trial was held, and the jury returned a verdict for defendant. On appeal, plaintiff argues that an incorrect instruction given to the jury was prejudicial error and deprived plaintiff of a fair trial. We agree and reverse and remand for a new trial.

## I. FACTS

In early December 1985, John Taylor admitted himself into the De Witt County Services Clinic (Clinic) in Clinton, Illinois. Taylor complained of depression and was diagnosed as having a suicidal ideation. Defendant was contacted by the Clinic and recommended that Taylor be admitted to the psychiatric ward of BroMenn Hospital in Normal, Illinois. During his treatment at BroMenn, Taylor was put on suicide precautions and administered medication for his treatment.

During Taylor's hospitalization, nurses observed his depression and noted in his medical records that he stated, "I just can't take it anymore," and "If I had a way to do it, I would." Defendant testified that he read these nurses' notes during Taylor's hospitalization and considered them in his treatment of Taylor.

Shortly before Christmas 1985, Taylor telephoned his wife. During this conversation, Taylor's wife told him that she wanted a divorce. Taylor returned to the hospital, tearful and crying. The next day, Taylor asked to be discharged. Defendant consulted with Taylor and decided to release him. Prior to Taylor's release, defendant prescribed a two-week supply of Ativan, a prescription medication used to combat anxiety and sleeplessness, and Sinequan, which is used to combat depression. A nurse testified that she instructed Taylor prior to his discharge on the use of the medication prescribed to him. She stressed to Taylor that the medication should not be mixed with other medications or be taken with alcohol or in increased dosages without his physician's approval.

A few hours after being discharged, Taylor bought a bottle of wine, drove to a secluded spot, and ingested all of the prescription drugs that he had been given, washing them down with the wine. He died as a result.

At trial, plaintiff called Dr. Richard Grant, a psychiatrist, who testified that, in his opinion, (1) defendant was negligent, (2) defendant's diagnosis was wrong, (3) Taylor obviously was planning suicide, and (4) Taylor was a substantial suicide risk. Grant also testified that he believed defendant should not have discharged Taylor just before Christmas and that Taylor should not have been given a two-week supply of prescription medicine. Defendant called Dr. Laura Miller,

also a psychiatrist, who testified that, in her opinion, defendant complied with the standard of care in his overall treatment of Taylor and that the dosages of Sinequan and Ativan were within permissible standards.

At the jury instruction conference, defendant tendered Illinois Pattern Jury Instructions, Civil, No. 105.08 (2d ed. 1971) (IPI Civil 2d), which states, in part, as follows:

> "A patient is required to follow reasonable advice as to treatment. In addition, he must follow the doctor's instructions. A doctor is not liable for the consequences of a patient's failure to do so."

Plaintiff objected to the use of this instruction, arguing that while it may apply when a patient refuses the treatment prescribed by a doctor, it did not apply in this type of malpractice case. Plaintiff also argued that the instruction would apply only in regard to the mitigation of damages. Despite these arguments, the court overruled plaintiff's objection.

The next day plaintiff renewed the objection to this instruction. First, plaintiff's attorney pointed out that the bracketed material of IPI Civil 2d No. 105.08 was not included in the instruction offered by defendant. That material reads as follows:

> "[A patient's failure to receive treatment or follow instructions does not absolve the doctor from the results of any earlier malpractice. It only absolves him from any injury caused by the patient's not accepting reasonable treatment or following instructions.]" IPI Civil 2d No. 105.08, at 330.

Second, counsel pointed to the comment to that instruction, which states as follows:

> "The patient must also follow the doctor's instructions, but the doctor will not be relieved if the failure to follow instructions merely aggravates the injury, *Krauss v. Ballinger*, 171 Ill. App. 534 (2d Dist.1909). The failure causing the aggravation goes to mitigation of damages rather than relief from liability." IPI Civil 2d No. 105.08, Comment, at 330.

The court ultimately decided to modify the instruction so that it read as follows:

> "A patient is required to follow reasonable advice as to treatment. In addition, he must follow the doctor's instructions. A doctor is not liable for the consequences of the patient's failure to do so, *unless you find that the patient was unable by reason of mental impairment to follow the doctor's instructions.*" (Emphasis added.)

The court overruled plaintiff's objection to this instruction.

The jury returned a verdict for defendant, the trial court denied plaintiff's post-trial motion, and plaintiff now appeals.

## II. JURY INSTRUCTION

Plaintiff argues that the trial court erred by giving IPI Civil 2d No. 105.08 in a modified form. The issues on appeal are whether or not this instruction was erroneous, and, if so, was it sufficiently prejudicial to warrant a new trial.

■ The first question we address is whether the trial court erred by giving IPI Civil 2d No. 105.08, as modified. We note that IPI Civil 2d No. 105.08 is solely a damages-reducing instruction. (*Fisher v. Slager* (1990), 201 Ill. App. 3d 480, 489, 559 N.E.2d 118, 124; Illinois Pattern Jury Instructions, Civil, No. 105.08, Comment, at 105-20 (3d ed. 1991) (IPI Civil 3d).) When the only issue before the jury is defendant's liability, the court should not give IPI Civil 2d No. 105.08 because it concerns only the mitigation of damages assessed against defendant due to the comparative negligence of plaintiff. IPI Civil 2d No. 105.08 does not apply unless the jury is called upon to determine the relative percentages of negligence of *both* parties. The present case does not involve comparative negligence. Accordingly, we hold that the trial court erred in giving the jury IPI Civil 2d No. 105.08 as modified, because it addressed the issue of plaintiff's decedent's comparative negligence.

We also note that court and counsel in this case were at a disadvantage because the IPI Civil instructions available to them at the time of trial were outdated. The 1971 version of IPI Civil 2d No. 105.08 used in this case is a relic of a bygone era, when plaintiffs in tort actions still had to plead and prove their freedom from contributory negligence. IPI Civil 2d No. 105.08 was only recently updated to conform to the law as it has been since *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, the seminal comparative negligence case in this State. Fortunately, this instruction has recently been modified to comport with the doctrine of comparative negligence introduced by *Alvis* over a decade ago, and the comment to that instruction now correctly emphasizes that the instruction should be limited *solely* to the mitigation of damages. See IPI Civil 3d No. 105.08, Comment, at 105-20.

■ We must next decide if this error sufficiently prejudiced plaintiff so as to require a new trial. We find the language of the instruction in question particularly troubling when we examine it in context with other instructions given to this jury. For example, the jury was given, in part, the following instruction:

"If you decide for the Plaintiff on the question of *liability,* you must then fix the amount of money which will reasonably and fairly compensate the two daughters and the widow of the decedent for the pecuniary loss proved by the evidence to have resulted to the two daughters and the widow from the death of the decedent." (Emphasis added.)

(See IPI Civil 3d No. 31.04.) Then, using IPI Civil 2d No. 105.08, the court instructed the jury that "A doctor is *not liable* for the consequences of a patient's failure" to follow the doctor's instructions. (Emphasis added.) See IPI Civil 2d No. 105.08.

We conclude that the inclusion of IPI Civil 2d No. 105.08, as modified, in this particular set of jury instructions skewed the jury's focus from the conduct of the defendant physician, where that focus properly belonged, to the conduct of the suicidal patient. The erroneous instruction told the jury that it could not find defendant "liable for the consequences of a patient's failure" to follow the doctor's instructions unless the patient could not follow those instructions by reason of mental impairment. Clearly, however, Taylor could follow the instructions given to him concerning his prescription medication. He apparently understood perfectly well that ingesting more than the daily prescribed amount in combination with alcohol would prove fatal. Indeed, the evidence shows that he understood those instructions so well that he twisted them around to find the means to kill himself.

On appeal, defendant argues that "[d]ecedent's ability to follow instructions was a key issue in this case." We disagree and deem this issue to be totally irrelevant. The instruction at issue in this case, IPI Civil 2d No. 105.08, as modified, improperly provided defendant with a complete affirmative defense, which in turn was premised upon an irrelevant issue. Accordingly, we find the trial court's error in giving this instruction sufficiently prejudiced plaintiff so as to require a new trial.

We note that this case is different than the typical medical malpractice case because plaintiff here alleges medical malpractice by a psychiatrist treating a suicidal patient who ultimately committed suicide. The critical distinction between this case and all other medical malpractice cases is that here the patient does not share the goal of his physician of getting better; while the doctor is working to assist the patient to suppress suicidal tendencies, the patient, by the nature of his illness, may be working at cross-purposes to his doctor's suggestions and may not be interested in following instructions designed to enable him or her to safely take prescribed medication. We hold that in a suicide malpractice case against the decedent's psychiatrist,

the comparative fault of the decedent is not likely ever to be an appropriate or relevant issue, and here it was not.

In any event, defendant in this case did not raise comparative negligence as an issue. The sole issue for the jury to determine was whether defendant was liable for medical malpractice.

### III. Conclusion
The parties have raised other issues on appeal, but because we believe they are unlikely to arise at retrial, we decline to address them.

Reversed and remanded.

LUND, P.J., and McCULLOUGH, J., concur.