CAROLYN GROTHEN, Plaintiff-Appellee, v. MARSHALL FIELD AND COMPANY, Defendant-Appellant.

First District (4th Division)   No. 1—91—3797

Opinion filed September 9, 1993.

Wildman, Harrold, Allen & Dixon, of Chicago (Douglas L. Prochnow and Lawrence D. Mishkin, of counsel), for appellant.

Robert B. Patterson, of Drumke & Patterson, Ltd., of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant, Marshall Field and Company (hereinafter Field's), was assessed damages of $244,000 for injuries plaintiff, Carolyn Grothen, sustained as a result of a tripping incident in one of its stores. The jury found plaintiff to be 50% contributorily negligent and judgment was entered on the verdict for $122,000. The trial court later granted plaintiff's post-trial motion and entered judgment notwithstanding the verdict for $244,000.

On appeal, defendant contends (1) the trial court erroneously permitted the irrelevant testimony of a former Field's employee; and (2) the trial court improperly granted judgment notwithstanding the verdict to remedy an erroneous jury instruction.

The following facts were adduced at trial. While shopping in Field's Water Tower Place store with a companion, plaintiff tripped on a piece of metal stripping, used to hold down carpeting, and landed on the toes of both feet. Immediately following this incident, plaintiff saw a metal strip sticking up in the air. She then went to the personnel department of the store to file a report.

Plaintiff and her companion then drove approximately two hours to plaintiff's home in Lostant, Illinois. She testified that her feet hurt, became swollen, and turned black and blue. After she arrived home, she soaked her feet in soda and put bandages on them. She was unable to wear shoes because of the extreme pain and was forced to wear socks. In fact, the pain was so great that she could not walk. In November 1983, about two months after she was injured, she went to the emergency room of a local hospital where a doctor prescribed medication for her and recommended that she stay off her feet.

On April 10, 1984, plaintiff began to see a podiatrist, Dr. Adolph Galinski, as her feet were still swollen and black and blue. He diagnosed her as having hallux limitus, a limitation of motion of the big toe on the foot, and hammer toes on both feet. Dr. Galinski initially applied padding to plaintiff's feet and gave her an antiarthritic medication. Between April 1984 and September 1984, he saw her 11 times. During this period, he padded her shoes, continued the medication, injected her joints with both a local anesthetic and a steroid, and discussed surgical possibilities.

On September 10, 1984, Dr. Galinski performed extensive surgery on plaintiff's feet. He performed a cheilectomy, removing all the arthritic changes to straighten up the toes, and a phalangectomy, removing part of the bone to allow more motion in the joint eliminating the hammering of the toe. He also performed an osteotomy, purposefully breaking the bone and then putting it into position. He also lengthened her tendons, cutting them at the bottom of the toes ensuring that they remain lengthened. Lastly, he exised a skin lesion on the top of her right foot. Subsequent to these procedures, plaintiff visited Dr. Galinski eight times and the care ceased around December 1984, with no apparent complication.

In 1985, plaintiff saw Dr. Galinski six times because she had severe pain in her big toe joints. Dr. Galinski testified that on November 26, 1985, she visited him wearing 3½- to 4-inch heels and walked with a limp. On other occasions, he stated, she wore sandals as high as 2½ inches even though she had less pain in flats than in heels. Dr. Galinski had previously recommended that plaintiff wear 1½- to 2-

inch heels, flats, or gym shoes. He characterized her prognosis as "no problem to a slight problem over a long period of time."

Dr. Galinski stated that plaintiff's extreme pain was a result of a degenerative process which eventually compelled her to seek further treatment at the Mayo Clinic in 1990. Plaintiff had two surgeries at Mayo, one in January 1990 and the other in February 1991. She estimates the sum of her medical expenses to be $22,859.02.

Joseph Hendrix, who was in charge of the maintenance of the floor area where plaintiff was injured, testified that he was the manager to whom defective conditions were reported. He stated that, prior to plaintiff's tripping incident, he received reports of broken metal stripping and of people tripping on the carpeting or the stripping. He also testified that the cause of the broken stripping and torn carpeting resulted from pallet jacks used to distribute merchandise throughout the store. When the stripping broke, Hendrix would inspect the area and use a hammer to knock down the broken stripping if it had not completely broken off. If he was unable to put the stripping back into place, he would send for a repairman to fix it.

At the jury instruction conference, Field's offered two pertinent instructions. The first was a failure to mitigate instruction based on plaintiff's 2½-month delay in seeking medical treatment. The trial court refused this instruction because it did not believe there was sufficient evidence that plaintiff's failure to seek immediate treatment exacerbated her injuries. The second was a contributory negligence instruction regarding plaintiff's failure to follow doctor's orders by wearing improper shoes after surgery. Over plaintiff's objection, this instruction was given to the jury.

Ultimately, the jury awarded plaintiff $244,000, but assessed her comparative fault at 50%, thus reducing her award to $122,000. Plaintiff then filed a post-trial motion requesting that the trial court grant her judgment notwithstanding the verdict because the jury was erroneously given a contributory negligence instruction. The trial court later granted judgment notwithstanding the verdict in favor of plaintiff for the full $244,000. Field's appeals.

Initially on appeal, Field's argues that the trial court should have disallowed the testimony of Joseph Hendrix as it was irrelevant. We disagree.

■ " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Fed. R. Evid. 401.) Clearly, the testimony of Hendrix regarding the pallet jacks and the frequency with which they

broke the metal stripping increases the likelihood that Field's restocking procedures were the cause of the broken stripping which tripped plaintiff. This testimony was therefore relevant to the establishment of liability. The admission of evidence is within the sound discretion of the trial court and its determination will not be disturbed absent an abuse of discretion. (*Bosel v. Marriott Corp.* (1978), 65 Ill. App. 3d 649, 654.) We find that the trial court did not abuse its discretion in admitting the testimony of Hendrix.

As to the ultimate determination of liability, we will examine these facts in conjunction with the standards formulated in *Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113. First, the plaintiff must prove that the cause of the incident related to defendant's operations. Second, the plaintiff must proffer additional circumstantial evidence, *i.e.*, defendant's business practices, from which an inference could be drawn that it is more probable than not that the condition resulted from defendant or his servants rather than from a customer. If the negligence of defendant or his servants is established, defendant's knowledge or constructive notice is not in issue. *Donoho*, 13 Ill. 2d at 122.

The testimony of Joseph Hendrix concerned the customary use of pallet jacks, their relation to defendant's business and their tendency to break metal carpet stripping. Based upon this circumstantial evidence, we believe the jury could reasonably infer that the condition causing plaintiff's injury was more likely attributable to employee negligence rather than to unknown third parties. See *Donoho*, 13 Ill. 2d at 125; *Mraz v. Jewel Tea Co.* (1970), 121 Ill. App. 2d 209; *Piper v. Moran's Enterprises* (1984), 121 Ill. App. 3d 644; *Little v. Metropolis IGA Foods, Inc.* (1989), 188 Ill. App. 3d 136.

Next, Field's asserts that judgment notwithstanding the verdict was an improper remedy for an erroneous jury instruction.

Field's requested that the trial court instruct the jury as to contributory negligence regarding plaintiff's failure to follow doctor's orders by wearing sensible shoes after surgery. The trial court, over plaintiff's objection, granted this request and the jury was accordingly instructed. At the conclusion of trial, the jury found for plaintiff in the sum of $244,000 and assessed her comparative fault at 50%, reducing her award to $122,000.

After the trial court heard argument on plaintiff's motion for a new trial, it stated: "[T]he court erred *** in placing the issue of contributory negligence before the jury since defendant has raised no issue respecting the finding of the jury as to its liability of the plaintiff's total damages ***." The trial court proceeded to vacate the

judgment entered on the verdict and awarded plaintiff the full $244,000 as there was no evidence that her failure to follow doctor's instructions contributed to her injuries.

We find that the trial court's action was not improper in this instance. This action, granting judgment notwithstanding the verdict, correctly removed an issue from the jury which should never have been before it. The reinstatement of the jury's $244,000 assessment of damages, thus, erased the taint of the erroneous contributory negligence instruction. This resulted in a properly considered award as to liability based on correct instructions respecting the totality of the damages issue. We believe that it was within the trial court's broad discretion to implement judgment notwithstanding the verdict as a remedy for such an error.

■ Field's relatedly maintains that the trial court erroneously ruled that it waived its right to a failure to mitigate instruction. Field's claims that the trial court decided the waiver issue at the hearing on plaintiff's post-trial motion when it was not in a position to waive anything. Field's misapprehends the circumstances.

The waiver of the mitigation of damages instruction occurred at the jury instruction conference when Field's did not submit such an instruction relative to plaintiff's failure to follow doctor's orders. Field's had ample opportunity to tender all instructions it deemed appropriate and it declined to include the instruction of which it now complains.

Instead, it submitted a contributory negligence instruction pertaining to plaintiff's failure to follow doctor's orders after surgery by wearing improper shoes. It also offered a mitigation of damages instruction regarding plaintiff's delay in seeking medical treatment. These were the instructions Field's requested. The trial court properly struck the second instruction as there was no evidence that plaintiff's delay adversely affected her injuries.

Field's declination to submit a mitigation of damages instruction regarding plaintiff's failure to follow doctor's orders precludes its ability to raise this issue on appeal. On appeal in jury cases, "[n]o party may raise on appeal the failure to give an instruction unless he shall have tendered it." (134 Ill. 2d R. 366(b)(2)(i).) As it was previously incumbent upon Field's to provide the correct mitigation of damages instruction respecting plaintiff's post-operative conduct and it failed to do so, this issue is accordingly waived. (*Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 550.) In essence, Field's curious failure to recognize the distinction between contributory negligence and mitigation

of damages resulted in the jury's inability to consider the mitigation of damages issue.

For purposes of this discussion, however, we feel it important to note the distinct difference between contributory negligence and mitigation of damages. Contributory negligence involves circumstances where "[t]he plaintiff's negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility for it." (Restatement (Second) of Torts §465(1) (1965).) Mitigation of damages, on the other hand, imposes a duty upon the injured party "to exercise reasonable diligence and ordinary care in attempting to minimize his damages after injury has been inflicted." Black's Law Dictionary 904 (5th ed. 1979).

In light of the above distinction, therefore, Field's assertion—that, as it submitted a contributory negligence instruction regarding plaintiff's failure to follow doctor's orders, it did not need to submit a failure to mitigate instruction relative to the same issue—is incorrect.

Field's further suggests that the trial court, in the interest of fairness, should have ordered a new trial on damages because the jury was improperly instructed. We find this suggestion unreasonable because Field's is entirely responsible for the erroneous instruction of which it now complains. It is not the function of the trial court to ensure that parties tender the instructions most beneficial to them.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI,* P.J., and CAHILL, P.J., concur.

---

*Justice Jiganti participated in the disposition of this case prior to his retirement.