VERONICA BRADY, as Adm'r of the Estate of Paul B. Brady, Deceased, Plaintiff-Appellant, v. THOMAS McNAMARA, Defendant-Appellee.

First District (3rd Division)    No. 1—98—0801

Opinion filed December 22, 1999.—Rehearing denied March 6, 2000.—Modified opinion filed March 8, 2000.

James F. Driscoll, P.C., of Schaumburg (James F. Driscoll, of counsel), for appellant.

Hickey, Driscoll, Kurfirst, Patterson & Melia, of Chicago (Edward J. Melia and Stephen Burriesci, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Veronica Brady, as administrator of the estate of Paul B. Brady, deceased, appeals after the entry of a jury verdict in favor of defendant Thomas McNamara, M.D. This medical malpractice action was brought to recover damages for a fractured hip which delayed treatment of the true illness of Paul B. Brady. Plaintiff alleged that the damages were caused by defendant's misdiagnosis and failure to prescribe appropriate drugs for Brady's brain tumors. Defendant withdrew his affirmative defense of contributory negligence prior to the start of trial.

The issue in this case is whether the trial court committed prejudicial error in giving Illinois Pattern Jury Instructions, Civil, No. 105.08 (3d ed. 1995) (hereinafter IPI Civil 3d No. 105.08) concerning mitigation of damages for Brady's failure to follow medical instructions prior to his fall. IPI Civil 3d No. 105.08 stated in part that a doctor is not liable for damages caused by a patient's failure to follow a doctor's instructions. Defendant withdrew a proposed jury instruction for contributory negligence. We reverse and remand.

## FACTS

Plaintiff brought a complaint against McNamara, Alexian Brothers Medical Center, and four nurses, alleging personal injuries as a result of Brady falling and breaking his hip due to defendant's misdiagnosis and failure to prescribe appropriate drugs in September 1990. Plaintiff alleged that defendant wrongly concluded that Brady was suffering from cirrhosis of the liver (instead of cancer metastasized to the brain) and failed to administer the proper treatment. Allegedly as a result of the negligence, Brady fell while returning unsupervised from the washroom in a highly sedated state and suffered a fractured hip. The surgery on his hip delayed treatment of the true cause of the symptoms. Brady died before the complaint was filed.

Defendant raised in his answer the affirmative defense that Brady was negligent in failing to comply with defendant's orders and the hospital's instructions to seek assistance when Brady required to use the washroom or get out of bed. Defendant's affirmative defense further alleged that it was Brady's negligent act that was the sole proximate cause of the injuries suffered on September 19, 1990. The affirmative defense of contributory negligence was withdrawn prior to the start of the trial.

At trial there was evidence that on September 15, 1990, Brady went to see defendant with complaints of loss of equilibrium, unsteady gait, vomiting, and weight loss. Brady could not walk well without assistance. He reported having had lung cancer surgery in April 1990. His medical history included the drinking of six cans of beer a day and his last drink having been taken the day before.

Upon defendant's recommendation, Brady was admitted to Alexian Brothers Medical Center on September 16, 1990. Defendant's initial provisional diagnoses were alcoholic cerebellar degeneration, cirrhosis of the liver, and metastasized brain cancer. Defendant ordered various tests for Brady. Defendant ordered that Brady be assisted to the bathroom because of Brady's imbalance problem.

Although defendant ordered Valium only as needed for Brady in case the patient developed symptoms of alcohol withdrawal, hallucination, delirium tremens or disorientation, the nurses gave Brady Valium on September 16 and 17, 1990. Defendant believed that the administration of Valium was inappropriate because there was no evidence that Brady experienced loss of orientation. Defendant ordered the Valium stopped on September 18, 1990; the last time Brady received Valium was at noon. According to defendant, the nursing charts showed no physical effect of the Valium on Brady. Brady always appeared alert and oriented and never confused to defendant whenever defendant saw Brady before the fall.

Brady's wife, Catherine, testified that Brady was not disoriented and that he always was alert and coherent. The hospital records showed that Brady was alert and oriented at all times.

Brady was also given Restoril, a short-acting sleep medicine, on September 16 and 17, 1990. Defendant does not believe that Restoril affected Brady's consciousness.

On September 19, 1990, at about 2:45 a.m., Brady fell in his hospital room. Brady told his wife that he had gotten out of bed without assistance and that he had fallen upon leaving the bathroom when the bathroom door fell away. The medical chart stated that Brady was alert after he fell.

In the fall, Brady fractured his hip, and surgery was required. The report of the orthopedic surgeon who treated Brady's fracture stated that Brady denied to him any loss of consciousness or dizziness at the time of the fall.

A physician consultant who was brought into the case at some time after the fall prescribed the drug Decadron, which was used to reduce the swelling in the brain that caused Brady's loss of equilibrium.

Plaintiff's expert, Dr. Nancy McIntosh, testified that she disagreed

with the admitting diagnosis of cirrhosis of the liver and that the most likely cause of Brady's loss of balance was the two tumors that were ultimately found in Brady's brain. She believed that Valium was not an appropriate medication for Brady; it caused sedation and in high doses caused loss of balance. Her opinion was that the Valium worsened Brady's symptoms. She inferred from the hospital records that Brady did not remember things from moment to moment, but there was no reference in the nursing notes prior to the fall that he was confused. The drug Decadron would decrease confusion if the confusion was partially due to brain swelling.

Dr. Daniel Brown testified as an expert for defendant that defendant met all standards of care. Defendant had ordered a CT scan of Brady's head immediately upon admission. Brown believed that Brady was able to follow instructions, that Brady did not develop any disorientation from the Valium, that the Valium did not cause the fall, and that not giving Decadron did not cause the fall.

Patricia Peterson, a registered nurse, testified that she was retained as an expert by Alexian Brothers Medical Center. Her opinion was that the Valium did not have any relationship to Brady's fall.

After the conclusion of the testimony, defendant submitted IPI Civil 3d No. 105.08 at the jury instructions conference. The instruction is entitled "Ordinary Care—Duty to Follow Instructions—Submit to Treatment—Mitigation of Damages—Professional Negligence." The instruction submitted stated:

> "A patient must exercise ordinary care to follow reasonable medical instructions. A physician is not liable for the consequences of a patient's failure to do so. A patient's failure to use ordinary care in following instructions does not absolve the physician from any damages resulting from the physician's negligence. It only absolves the physician from any damages caused by the patient's failure to exercise ordinary care to follow reasonable medical instructions."

Plaintiff's attorney objected to the instruction as an attempt to make Brady's contributory negligence an issue in the case. The trial court stated that the instruction was appropriate because the tort occurred the moment when the medications were given to Brady and not at the time of the fall. Defendant's attorney stated that he "did withdraw a contributory negligence [sic]." The trial court ruled that it would give IPI Civil 3d No. 105.08.

Plaintiff argued in closing argument that defendant incorrectly diagnosed and treated Brady and that defendant should have prescribed Decadron. Regarding the injuries to plaintiff, his attorney told the jury that for three months Brady had to walk with a cane or a walker and suffered pain due to his broken hip. In closing argument,

plaintiff also requested damages for Dr. Schroeder's bill and for the surgery to his hip at a hospital.

Defendant argued that Brady would not have hurt himself if Brady had complied with medical orders and that defendant was not liable for Brady's failure to follow instructions.

In addition to being given IPI Civil 3d No. 105.08, the jury was instructed that if it "decide[d] for the defendant on the question of liability, [it would] have no occasion to consider the question of damages." IPI Civil 3d No. 36.01.

The jury found in favor of defendant, and judgment was entered on October 15, 1997. After denial of plaintiff's posttrial motion, plaintiff appealed on March 6, 1998.

## DISCUSSION

Plaintiff argues on appeal that the trial court erred in giving IPI Civil 3d No. 105.08 because (1) Brady's walking without assistance was not a failure to mitigate damages because his getting out of bed without assistance occurred before his fall; (2) the mitigation instruction raised the issue of Brady's contributory negligence although the affirmative defense of contributory negligence had been withdrawn; and (3) the instruction left the jury no choice but to find defendant not guilty because the instruction shifted the jury's attention away from defendant's conduct. Plaintiff concedes that there was no question that Brady left his bed without assistance.

Defendant argues that (1) the instruction was appropriate because plaintiff's theory at trial was that defendant was negligent prior to the fall (by misdiagnosing Brady's condition and by failing to prescribe appropriate medications) and that Brady's failure to follow instructions was a failure to mitigate his damages; and (2) because the jury found for defendant, the jury had no occasion to consider the issue of reduction of damages presented in IPI Civil 3d No. 105.08.

■ An instruction is justified if it is supported by some evidence in the record, and the trial court has discretion in deciding which issues are raised by the evidence. *Bielicke v. Terminal R.R. Ass'n*, 291 Ill. App. 3d 690, 693, 684 N.E.2d 160 (1997). The trial court's determination as to what instruction should be given to the jury will not be reversed on review absent an abuse of discretion. *Diaz v. Kelley*, 275 Ill. App. 3d 1058, 1068, 657 N.E.2d 657 (1995). Reversible error occurs when the court instructs the jury on an issue that is not supported by the evidence. *Savage v. Martin*, 256 Ill. App. 3d 272, 284, 628 N.E.2d 606 (1993).

■ The "Notes on Use" to IPI Civil 3d No. 105.08 restrict the use of IPI Civil 3d No. 105.08:

"This instruction applies only to those instances where the defendant claims that the plaintiff has failed to mitigate his damages by failing to use ordinary care in not seeking treatment or in not following the doctor's instructions concerning treatment." IPI Civil 3d No. 105.08, Notes On Use, at 305.

The comment to instruction IPI Civil 3d No. 105.08 provides in part:

"Once an injury has occurred as a proximate result of medical negligence, the patient has a continuing duty to follow the instruction of physicians in order to mitigate his damages. *Haering v. Spicer*, 92 Ill. App. 449 (1900); *Littlejohn v. Arbogast*, 95 Ill. App. 605 (1901). A physician will not be held liable for any injuries resulting from the patient's failure to follow instructions, but the physician will continue to be responsible for the injury caused by his original professional negligence. *Wesley v. Allen*, 235 Ill. App. 322 (4th Dist. 1925); *Krauss v. Ballinger*, 171 Ill. App. 534 (1912)." IPI Civil 3d No. 105.08, Comment, at 305.

■ Mitigation of damages is a distinct concept that is separate from contributory negligence. *Grothen v. Marshall Field & Co.*, 253 Ill. App. 3d 122, 128 (1993). Contributory negligence involves circumstances where the plaintiff's negligence is a legally contributing cause of his harm if it is a substantial factor in bringing about his harm. *Grothen*, 253 Ill. App. 3d at 128. In contrast, the rule of mitigation of damages involves imposing a duty upon the injured party to exercise reasonable diligence and ordinary care in attempting to minimize his damages *after* injury has been inflicted. *Grothen*, 253 Ill. App. 3d at 128.

In *Peoples Bank v. Damera*, 220 Ill. App. 3d 1031, 625 N.E.2d 343 (1991), plaintiff alleged that the defendant psychiatrist was guilty of medical malpractice for discharging decedent from the psychiatric ward of a hospital and also for giving him a two-week supply of prescription medicine. After being discharged, decedent ingested all of the prescription drugs that he had been given with a bottle of wine and died as a result. The injury for which plaintiff sought recovery was the death of decedent.

In *Damera* the court gave jury instruction IPI Civil 2d No. 105.08 (2d ed. 1971), as modified, which stated:

" 'A patient is required to follow reasonable advice as to treatment. In addition, he must follow the doctor's instructions. A doctor is not liable for the consequences of the patient's failure to do so, *unless you find that the patient was unable by reason of mental impairment to follow the doctor's instructions.*' " (Emphasis in original.) *Damera*, 220 Ill. App. 3d at 1033.

*Damera* held:

"When the only issue before the jury is defendant's liability, the court should not give IPI Civil 2d No. 105.08 because it concerns only the mitigation of damages assessed against defendant due to the comparative negligence of plaintiff. IPI Civil 2d No. 105.08 does not apply unless the jury is called upon to determine the relative percentages of negligence of *both* parties. The present case does not involve comparative negligence. Accordingly, we hold that the trial court erred in giving the jury IPI Civil 2d No. 105.08 as modified, because it addressed the issue of plaintiff's decedent's comparative negligence." (Emphasis in original.) *Damera*, 220 Ill. App. 3d at 1034.

The *Damera* case concluded that the jury instructions skewed the jury's focus from the conduct of the defendant physician to the conduct of the suicidal patient. *Damera*, 220 Ill. App. 3d at 1035. The court disagreed that the decedent's ability to follow instructions was a key issue in this case. *Damera*, 220 Ill. App. 3d at 1035. It held that the issue was totally irrelevant and that the instruction provided defendant with a complete affirmative defense premised upon an irrelevant issue. *Damera*, 220 Ill. App. 3d at 1035. The court held that the trial court's error in giving the instruction prejudiced plaintiff and required a new trial. *Damera*, 220 Ill. App. 3d at 1035.

In *Fisher v. Slager*, 201 Ill. App. 3d 480, 559 N.E.2d 118 (1990), the plaintiff brought wrongful death and survival actions against 11 doctors and hospitals. The facts stated in the case do not indicate whether the affirmative defense of contributory negligence was raised in the pleadings. The jury returned a verdict in favor of all defendants. The trial court gave the jury IPI Civil 2d No. 105.08. There was no comparative negligence instruction tendered to the court. There clearly was evidence that the patient failed to mitigate damages when he failed to undergo a medical procedure and when he declined therapy as an in-patient as recommended.

On appeal, the court indicated that IPI Civil 2d No. 105.08 is solely a damage-reducing instruction and IPI Civil 3d No. 45.07 (comparative negligence) is a damage-reducing verdict form. *Fisher*, 201 Ill. App. 3d at 489. The court held that the failure to give a comparative negligence jury instruction would be a nugatory error, if it were error. *Fisher*, 201 Ill. App. 3d at 489. The court pointed out that the jury was also instructed that, if it decided for the defendants, it would not have to consider the question of damages. *Fisher*, 201 Ill. App. 3d at 489.

In the case *sub judice*, there was no evidence that Brady failed to mitigate his damages after he fell and fractured his hip, whereas in *Fisher* there was evidence that the plaintiff failed to mitigate his dam-

ages. Also in this case, defendant withdrew his affirmative defense, whereas in *Fisher* the facts do not reveal whether an affirmative defense was pled. Therefore, we decline to conclude that we should also affirm the trial court.

A medical malpractice case similar to the case *sub judice* is *Aimonette v. Hartmann*, 214 Ill. App. 3d 314, 574 N.E.2d 776 (1991). In that case, one of the defendants filed an affirmative defense alleging that plaintiff was contributorily negligent for part of his injuries. Plaintiff entered a hospital for tests. The next day plaintiff was discharged from the hospital because he had a vacation already scheduled. When plaintiff came back from his vacation, his breathing problems persisted. A few days later, he suffered a stroke while jogging. After he was released from a hospital, he entered a rehabilitation center. One of the defendant physicians testified that he told plaintiff to contact him when he returned from his vacation but that plaintiff failed to contact him. Also, plaintiff did not tell him about any numbness in his arm. Defendants withdrew instructions for comparative negligence. The jury returned a verdict in favor of all defendants. IPI Civil 2d No. 105.08 (2d ed. 1971) was given to the jury.

IPI Civil 2d No. 105.08 is basically similar to IPI Civil 3d No. 105.08, which was given in the case *sub judice*. The *Aimonette* court found that there were grounds for submitting a mitigation-of-damages instruction: the court stated that, before he suffered his stroke, plaintiff failed to report his new symptoms and did not return to see either of his physicians after his condition began to deteriorate. *Aimonette*, 214 Ill. App. 3d at 321.

The *Aimonette* court also stated that because the jury had been given IPI Civil 3d No. 36.01 (which states that if the jury decided in favor of a defendant on the question of liability it would have no occasion to consider the question of damages as to that defendant), the jury would only need to consider the mitigation instruction if one of the defendants was found liable. Thus, the court reasoned, the jury had no reason to consider reducing plaintiff's damages. *Aimonette*, 214 Ill. App. 3d at 320. The court held that it was not error to give the mitigation-of-damages instruction. *Aimonette*, 214 Ill. App. 3d at 321. The court also affirmed the trial court's decision not to allow plaintiff to tender instructions on comparative negligence. *Aimonette*, 214 Ill. App. 3d at 322.

The dissent believed it was reversible error to give IPI Civil 2d No. 105.08 to the jury. *Aimonette*, 214 Ill. App. 3d at 324 (Reinhard, P.J., dissenting). We agree with the dissent. The dissent indicated that, when plaintiff's negligence is an issue, a comparative negligence instruction should be given because plaintiff's negligence can be a

contributing cause of the injury. *Aimonette*, 214 Ill. App. 3d at 324. On the other hand, a mitigation instruction is solely a damage-reducing instruction that is inappropriate where the real question is whether the plaintiff's negligence was a contributing cause of a single injury. *Aimonette*, 214 Ill. App. 3d at 324. The dissent also pointed out that IPI Civil 2d No. 105.08 permits the mitigation of damages against a physician where the patient does not follow reasonable advice as to treatment or does not follow the physician's instructions *subsequent to the injury caused by the earlier malpractice of the physician. Aimonette*, 214 Ill. App. 3d at 324. The dissent stated that no injury occurred before the plaintiff suffered a stroke. *Aimonette*, 214 Ill. App. 3d at 325. The alleged failure to follow instructions occurred before the stroke and could only be used to compare plaintiff's negligence with that of defendants in order to determine the proximate cause of the injury. *Aimonette*, 214 Ill. App. 3d at 325.

We also agree with the dissent's statement that the plaintiff's failure to follow instructions could have been a contributing cause of the injury but that it did not aggravate an existing injury caused by defendant's negligence. *Aimonette*, 214 Ill. App. 3d at 325. The injury did not exist until plaintiff suffered a stroke. *Aimonette*, 214 Ill. App. 3d at 325. The *Aimonette* defendants argued to the jury that, even if the doctors were wrong, plaintiff still could not be entitled to recover because of his own conduct in not following the advice as to treatment and not following the doctor's instructions. The dissent argued that the improper use of IPI Civil 2d No. 105.08 to avoid liability confused plaintiff's duty to mitigate damages with the separate question of whether plaintiff's conduct was a contributing cause of the stroke which was the injury. *Aimonette*, 214 Ill. App. 3d at 325.

In our case, the patient's getting out of bed without assistance was not a failure to mitigate his damages. Brady's failure to abide by the order not to walk without assistance did occur after the allegedly negligent act of defendant in prescribing Valium instead of Decadron. However, walking without assistance occurred before the fall and before the fracture of the hip. The hip fracture was the injury proximately caused by the alleged malpractice for which damages were sought. The loss-of-balance problem put Brady at risk of falling if he walked unassisted. As defendant did not claim that Brady failed to mitigate his damages *after* the fall, IPI Civil 3d No. 105.08 was not applicable to this case.

We note that in closing argument to the jury, plaintiff did not request damages for the alleged negligent act of defendant in prescribing Valium instead of Decadron. Plaintiff only asked the jury to award him damages for the pain and suffering due to his broken hip and for

his medical and hospital expenses. Clearly, the one injury that plaintiff claimed in this case was the broken hip.

In the final argument to the jury, the defendant argued that the issue in the case was the conduct of the patient in disregarding the doctor's order not to get out of bed without assistance and that it was not a case of medical negligence. This conduct occurred before the fall.

When defendant withdrew his affirmative defense, Brady's contributory negligence as a proximate cause of his fractured hip was no longer an issue. Brady's failure to follow the defendant's instructions occurred before the fall and therefore was not an issue. There was no evidence that any subsequent act or omission by Brady aggravated his hip injury. There was no evidence that Brady failed to mitigate damages for his hip injury. Brady's hip injury was treated after his fall.

As the only issue before the jury in this case was defendant's liability, the court should not have given IPI Civil 3d No. 105.08 because it covers only mitigation of damages assessed against defendant due to the comparative negligence of Brady. Comparative negligence is not an issue in this case. We hold that it was error to give the mitigation instruction because it covered the issue of Brady's comparative negligence before his fall and because there was no evidence to support the instruction to the jury. *Savage*, 256 Ill. App. 3d at 284.

We also find that submission of IPI Civil 3d No. 105.08 turned the jury's attention away from the conduct of the defendant physician to the conduct of Brady. This mitigation instruction furnished defendant with an affirmative defense that was based on the irrelevant issue of Brady's conduct. Therefore, we find that the error in giving this instruction to the jury prejudiced plaintiff and entitles her to a new trial.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

BURKE and McBRIDE, JJ., concur.