NO. 4-09-0541    Filed 10/6/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| DAWN AUTEN, f/k/a DAWN BARNETT, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| CHRISTINE FRANKLIN, | ) | No. 05L19 |
|     Defendant, | ) | |
|     and | ) | |
| LARRY NORD and CENTRAL ILLINOIS | ) | Honorable |
| ORTHOPEDIC SURGERY, S.C., | ) | John W. Belz, |
|     Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the opinion of the court:

Defendants, Dr. Larry Nord and Central Illinois Ortho-
pedic Surgery, S.C. (medical defendants), appeal from a jury
verdict in favor of plaintiff, Dawn Auten, resulting from inju-
ries plaintiff received from an automobile accident with defen-
dant, Christine Franklin, and the medical treatment given by the
medical defendants.  Plaintiff's injuries included a right
forearm fracture and a dislocated right index finger.  The
medical defendants contend (1) the trial court erred in giving
jury instructions failing to differentiate between the injuries
caused by Franklin and those caused by the medical defendants,
injecting insurance into the case, and confusing the jury on the
consideration to be given expert witness testimony; (2) the court
erred in limiting or denying evidence qualified radiologists were
not able to diagnose plaintiff's dislocated finger prior to the
medical defendants' failure to do so; and (3) errors occurred in

both opening statement and closing argument denying the medical defendants a fair trial. Because the verdict form failed to differentiate between the injury caused solely by Franklin to plaintiff's forearm and the injury caused to the index finger for which both Franklin and the medical defendants are liable, we reverse.

## I. BACKGROUND

On December 11, 2003, a vehicle driven by Franklin collided with a vehicle driven by Timothy Auten in Springfield. Plaintiff was a passenger in Auten's vehicle. Plaintiff was injured and taken to the emergency department of Memorial Medical Center (Memorial) in Springfield where she was seen by emergency-room physician Dr. Ronald Pickett.

Dr. Pickett diagnosed a two-bone fracture of plaintiff's right forearm. Dr. Roger Haag, a clinical radiologist, was asked to read an X ray of the front and lateral views of the right forearm, verifying these fractures. He did so, finding plaintiff had fractured the mid-portion of the right radius and ulna. He saw no other fractures in the X rays of the forearm. A specific X ray of plaintiff's hand was not taken at Memorial.

Plaintiff claimed she was in excruciating pain when her right arm was raised by holding on to her index finger in order to take the X rays. She reported she had braced for the impact of the automobile accident using her right hand.

Plaintiff was also seen at Memorial by orthopedic surgeon Dr. Michael Watson and orthopedic resident Dr. Joseph Norris. Dr. Watson gave plaintiff the choice of having her right forearm fractures internally set by an orthopedic surgeon in Bloomington since she lived there. Plaintiff chose to do that and saw Dr. Larry Nord, a surgeon employed by Central Illinois Orthopedic Surgery, S.C. Dr. Nord scheduled surgery for December 13, 2003.

On January 15, 2005, plaintiff filed suit against Franklin, seeking to recover damages for injuries she suffered as a result of the automobile accident. On April 5, 2006, plaintiff filed an amended complaint, adding as defendants Dr. Pickett, Midwest Emergency Department Specialists, Ltd., Dr. Norris, Memorial Medical Center, Dr. Haag, Clinical Radiologists, S.C., Dr. Nord, and Central Illinois Orthopedic Surgery, S.C. Plaintiff alleged the newly added defendants failed to diagnose a dislocated index finger. When the case proceeded to trial on March 2, 2009, the remaining defendants were Franklin, Dr. Nord, and Central Illinois Orthopedic Surgery, S.C.

Dr. Nord performed an open reduction internal fixation on December 13, 2003, and advised plaintiff she may not get a return of her radial nerve sensory function. He did not notice anything unusual about plaintiff's index finger. Following her surgery, Dr. William Cooley, a board-certified radiologist,

- 3 -

reviewed postoperative X-ray film of plaintiff's right forearm and right hand to determine if the surgery had resulted in properly setting plaintiff's forearm bones. He reported it did.

Following the surgery, Dr. Nord saw plaintiff 13 times for follow-up care. He testified he palpated her hand, including her index finger, every time her cast was changed. Dr. Nord stated plaintiff had kind of chubby hands and swelling on top of that from the forearm fracture. It took six months for the fractures to heal, and she had swelling in her hand the entire time.

Dr. Nord testified he did not receive any specific complaint of pain in plaintiff's right index finger. Even after she started hand, wrist, and elbow motion exercises, plaintiff did not make any complaints of pain in regard to her right index finger. There are no notations in Dr. Nord's medical records in regard to plaintiff indicating she made any complaints of pain.

Plaintiff insists she made complaints of hand and finger pain regularly to Dr. Nord and other employees of Central Illinois Orthopedic Surgery during the course of her treatment by them.

On June 14, 2004, Stephanie Roberts, a licensed physical therapist employed by Neuro Ortho Rehab Center, an outpatient physical therapy clinic, saw plaintiff for a physical-therapy initial evaluation. Plaintiff had been referred by Dr. Nord.

- 4 -

Plaintiff complained of an ache in the right wrist and fingers. She stated she had no feeling in the right fingers and had throbbing pain when she lay down. She also complained of pain in the second metacarpal and finger and a bump at the second meta-carpal (the index finger).

Roberts palpated plaintiff's right index finger and discovered a "hard, bony-like protrusion *** at the distal first metacarpal." (Roberts acknowledged the injury was actually at the second metacarpal and she erroneously charted it as the "first" metacarpal.) Roberts wrote in plaintiff's medical chart the symptoms in regard to plaintiff's finger were the result of the automobile accident in December 2003. This information was related to her by plaintiff.

Plaintiff saw Roberts again on June 21, 2004, and at that time complained of moderate tenderness as a result of palpation at the second metacarpal. She was having increased pain as her splint was hurting the first and second metacarpal region and she requested to see Dr. Nord as soon as possible.

On June 26, 2004, a sagittal view computerized tomography (CT) scan was performed of plaintiff's right index finger. This scan disclosed the dislocation of her right index finger. Dr. Nord had ordered this scan to look at the radius in her forearm three-dimensionally to determine why that fracture was not healing and to get a three-dimensional look at the

metacarpal phalangeal joint around her right index finger to see what was the exact condition and alignment of the bone structure.

Dr. Nord was "shocked" to find a dislocation after the CT scan and then performed surgery on plaintiff's finger on June 29, 2004. A second procedure was performed on July 19, 2004, and then plaintiff was referred by Dr. Nord to a hand specialist, Dr. Frank Lee.

On July 22, 2004, Dr. Lee saw plaintiff. He noted plaintiff had dislocated the bones making up the knuckle of her right index finger. Dr. Lee had her continue with therapy. He continued to see plaintiff and eventually performed surgery on her finger October 19, 2004. Dr. Lee continued to prescribe vigorous therapy but eventually performed fusion surgery on January 6, 2005. He considered the fusion a success but only saw plaintiff for one follow-up visit. Dr. Lee testified if there is more than one injury, the pain of a dislocation may be overwhelmed by the pain of the other injury.

On August 3, 2006, plaintiff sought treatment from Dr. Mitchell Rotman, an orthopedic surgeon specializing in elbows, shoulders, and hands. Dr. Rotman operated on plaintiff and scraped out scar tissue and removed wires which were inserted at the time of the fusion in order for plaintiff to regain more range of motion. Plaintiff testified after this surgery she not only regained motion but the pain decreased also.

Dr. Rotman testified, as plaintiff's medical expert witness, it was a breach of the standard of care for a reasonably well-qualified orthopedic surgeon to miss the warning signs of the finger injury which were presented. The X rays taken and reviewed by Dr. Nord himself were diagnostic of plaintiff's right index finger dislocation. It was also Dr. Rotman's opinion, as it was all the other doctors who were asked, including Dr. Nord, a patient with a dislocated finger as plaintiff had would have been in extreme pain and would have been expected to complain about it to her physician. Rotman did concede plaintiff's finger dislocation was an unusual presentation but was adamant it could have been discovered earlier and, thus, would not have involved the degree of damage presented by torn and stretched ligaments and tendons encountered by the late diagnosis and treatment in this case.

Dr. Mark Cohen, an orthopedic surgeon specializing in the hand, wrist, forearm, and elbow, testified as the medical defendants' medical expert witness. Dr. Cohen reviewed the X-ray films taken at Memorial and did not find those films to be diagnostic of a dislocation of the index finger. Nor did he find anything diagnostic of a dislocation in the films taken after plaintiff's forearm surgery. Dr. Cohen also reviewed the films taken by Dr. Nord in his office on February 10, 2004, and March 9, 2004, post-operation and found those did not show anything

diagnostic of a dislocation either. The problem with all of the X rays taken was they focused on the forearm fracture area and the finger was shown at an angle, making it difficult to see exactly what was going on with the finger.

Dr. Cohen did concede the X rays showed a "pathology" in regard to plaintiff's right index finger. He also acknowledged five separate complaints of either hand or finger pain by plaintiff in the first few days of her initial hospitalization.

Dr. Cooley, the Bloomington radiologist, testified he reviewed the December 13, 2003, X-ray film after plaintiff's initial surgery with Dr. Nord and reported it showed an open reduction of fractures of both the radius and ulna. He testified at trial the film also depicted a medial dislocation of the phalanx on the metacarpal joint of the right index finger. He also reviewed the results of the CT scan taken on June 26, 2004, and testified it showed the proximal phalanx of the same finger was displaced posteriorly on the metacarpal. Dr. Cooley stated this was the same dislocation fracture in both studies. Dr. Cooley then admitted the X-ray report he authored in regard to the December 13, 2003, X ray made no mention of the fracture dislocation of plaintiff's right index finger because he did not visualize the fracture dislocation at that time.

According to Dr. Cooley, it is easier for a radiologist to find a fracture dislocation on an X ray once he is told of its

- 8 -

existence. The first time he detected the fracture dislocation of plaintiff's finger was after he was told there was a lawsuit involving the finger. Dr. Cooley also stated the training a radiologist receives in interpreting X rays is greater than that of an orthopedic surgeon.

The jury returned a verdict in favor of plaintiff and against defendants Franklin, Dr. Nord, and Central Illinois Orthopedic Surgery in the total amount of $307,000. Plaintiff was awarded $107,000 for the reasonable expense of necessary medical care; $25,000 for disfigurement; $75,000 for pain and suffering, including future pain and suffering; and $100,000 for disability, including future disability. The jury found Franklin to be 75% at fault and the medical defendants to be 25% at fault.

After receiving an extension of time to file, the medical defendants filed a posttrial motion on May 19, 2009. All of the issues raised on appeal were raised in that motion. On June 26, 2009, the trial court denied the motion. This appeal followed. Franklin did not appeal.

II. ANALYSIS

A. Jury Instructions

The medical defendants argue the trial court erred in giving jury instructions (1) which failed to differentiate between the injury caused solely by Franklin to plaintiff's forearm and the injury caused to the index finger for which both

Franklin and the medical defendants are liable, (2) injected insurance into the case, and (3) confused the jury on the consideration to be given expert witness testimony.

It is within the discretion of the trial court to determine what jury instructions should be given, and a reviewing court will not disturb the decision of the trial court unless it abuses its discretion. Brady v. McNamara, 311 Ill. App. 3d 542, 546, 724 N.E.2d 949, 952 (2000). "[T]he trial court has the discretion to determine if a particular jury instruction is applicable, supported by evidence in the record, and an accurate statement of the law." Luye v. Schopper, 348 Ill. App. 3d 767, 773, 809 N.E.2d 156, 161 (2004). The standard for deciding whether a trial court abused its discretion and the propriety of tendered instructions is "whether the jury was fairly, fully and comprehensively informed on the relevant principles, considering the instructions in their entirety." Saunders v. Schultz, 20 Ill. 2d 301, 314, 170 N.E.2d 163, 170 (1960); Matarese v. Buka, 386 Ill. App. 3d 176, 179, 897 N.E.2d 893, 896 (2008).

A trial court is required to use an Illinois Pattern Jury Instruction when it is applicable to a civil case unless the court determines it does not accurately state the law. 177 Ill. 2d R. 239(a); York v. Rush-Presbyterian-St. Luke's Medical Center, 222 Ill. 2d 147, 204, 854 N.E.2d 635, 666 (2006). The issue of whether a jury instruction is an accurate statement of

the law is reviewed <u>de</u> <u>novo</u>.  <u>Studt v. Sherman Health Systems</u>, 387 Ill. App. 3d 401, 403, 900 N.E.2d 1212, 1214 (2008).

        1. <u>Failure To Differentiate Between the Injuries</u>

Plaintiff did not seek damages for her right forearm fracture against the medical defendants, only against Franklin. Damages were sought from all three for the injury to her right index finger.  Yet the verdict form given did not require the jury to make a separate calculation for the damages attributed to plaintiff's right forearm fracture and her dislocated right index finger.  The medical defendants contend this is error.

Plaintiff and the medical defendants each offered a different verdict form.  The medical defendants objected to the use of plaintiff's proffered instruction and submitted one of their own which, upon plaintiff's objection, was refused by the trial court.  Plaintiff's instruction was given.

Plaintiff's instruction No. 9 (Verdict Form A) was Illinois Pattern Jury Instructions, Civil, No. B45.03.A (Supp. 2008) (hereinafter IPI Civil (Supp. 2008) No. B45.03.A).  It stated jurors were to find for plaintiff and against either Franklin or the medical defendants, or both.  (A copy is appended at the end of this opinion.)  Plaintiff's instruction No. 9 provided a blank for determining the total monetary amount of damages suffered by plaintiff as a proximate result of the occurrence.  Then blanks were provided for the itemization of

damages: medical expenses, pain and suffering, disability, and disfigurement. Finally, the jury was to assume 100% represented the total combined fault of all persons or entities whose fault proximately caused plaintiff's injuries, including any defendant found liable, and find the fault attributable to each. The jury was also informed if any defendant was found not liable to plaintiff, zero (0) should be entered as to the percentage for that defendant.

The medical defendants argue using plaintiff's instruction No. 9 was error. Although Franklin, as defendant driver, is responsible for all injuries arising as a result of the auto accident, the medical defendants are not responsible for any injury related solely to the auto accident and unrelated to the medical care provided. This would exclude any damages for treatment provided for plaintiff's right forearm fracture as plaintiff neither alleged nor proved any negligence in regard to that treatment.

Thus, the medical defendants offered their jury instruction No. 29A, which followed the same general format as IPI Civil (Supp. 2008) No. B45.03.A offered by plaintiff but separated the findings, requiring the jury to find liability and damages as to plaintiff's right forearm injury just as to defendant Franklin and as to her right index finger injury as to defendant Franklin and the medical defendants. (A copy is

appended at the end of this opinion.)  The medical defendants' instruction No. 29A included the itemization of damages found in plaintiff's instruction No. 9 but provided two separate itemizations, one for plaintiff's right forearm and one for her right index finger.  This instruction was refused by the trial court after plaintiff objected to it.

The medical defendants argued plaintiff suffered two distinct injuries, one to her forearm and one to her index finger.  Plaintiff basically conceded this point at oral argument, and her complaint only sought damages from Dr. Nord for the injury to her index finger.  According to the medical defendants, the jury could find the medical defendants negligent for failure to diagnose plaintiff's dislocated finger, but they should not have been allowed to assess liability for the fractures to the right forearm caused by Franklin.  No claim was made through testimony or other evidence against the medical defendants for treatment of the right forearm fracture; thus, no basis existed for asking the jury to award damages against them for those injuries.  However, the verdict form offered by plaintiff did not separate the claims.  Both plaintiff and Franklin objected to the medical defendants' proffered verdict form, saying it was confusing and the percentages of liability offered in plaintiff's proffered verdict form were sufficient.  The trial court rejected defendants' instruction without giving a specific reason.

At oral argument, plaintiff's counsel argued a verdict form giving the jury the opportunity to assess separate damages for each injury would be too confusing and would require the jury to sort through the medical bills and attribute them accordingly. However, Franklin's counsel had no problem doing that. At trial, he argued the medical expenses attributable to the injuries were as follows: arm, $42,100; finger, $65,688; and overlapping arm and finger, $5,903. Indeed, plaintiff's own exhibit F, appended to her brief, also depicts a division of the medical bills according to the injury to the forearm, the injury to the finger, and the overlapping expenses. Consequently, we find it would not be impossible or overly confusing for the jury to be required to determine an amount of damages attributable solely to the forearm fracture, for which the medical defendants would have no liability whatsoever.

The medical defendants argue the use of plaintiff's instruction No. 9 under the facts of this case is contrary to Illinois law. We agree. It is a well-established principle in Illinois law, where a plaintiff's injuries are separable, defendants are not jointly and severally liable for the damages. Sakellariadis v. Campbell, 391 Ill. App. 3d 795, 802, 909 N.E.2d 353, 360 (2009). In Patton v. Carbondale Clinic, S.C., 161 Ill. 2d 357, 370, 641 N.E.2d 427, 435 (1994), the defendants were not joint tortfeasors where the plaintiff suffered two distinct

injuries: the first injury suffered in an automobile accident and the second suffered from the doctor's malpractice in treating her injuries. The injuries were found to be separate and distinct. Carbondale Clinic, 161 Ill. 2d at 374, 641 N.E.2d at 431. In Burke v. 12 Rothschild's Liquor Mart, Inc., 148 Ill. 2d 429, 437-38, 593 N.E.2d 522, 525 (1992), our supreme court held where a plaintiff's injury can be distinguished from a physician's aggravation of the injury, separate and distinct injuries occur and defendants cannot be held jointly liable. However, "where defendants, albeit sharing no common purpose or duty, and failing to act in concert, nevertheless acted concurrently to produce an indivisible injury to the plaintiff," the defendants are joint tortfeasors. (Emphasis in original.) Burke, 148 Ill. 2d at 438, 593 N.E.2d at 526. In Burke, the plaintiff was injured by the first tortfeasor, and that injury was exacerbated and/or plaintiff received an additional injury from a second tortfeasor. Burke, 148 Ill. 2d at 439, 593 N.E.2d at 526. Either injury or both injuries could have caused plaintiff's permanent condition. Because the injury was indivisible, the defendants were joint tortfeasors. Burke, 148 Ill. 2d at 439, 593 N.E.2d at 526.

Plaintiff states in her brief "[h]ere, plaintiff's finger injury was a single, indivisible injury. The existence of a single, individual [sic] injury establishes that multiple defendants are jointly and severally liable." (Emphasis added.)

The problem with plaintiff's second sentence is it does not end with the following phrase "for plaintiff's finger injury." In other words, because plaintiff suffered injuries which are indivisible as to her index finger, both Franklin and the medical defendants are liable for this injury. However, there was no dispute only Franklin is responsible for the fractured forearm, and the medical defendants could not be made to pay for damages resulting from the forearm injury.

Plaintiff notes our supreme court, in Burke, adopted the test of jointness in section 433A of the Restatement (Second) of Torts. The court stated "[t]he test of jointness is indivisibility of the injury." Burke, 148 Ill. 2d at 438, 593 N.E.2d at 526.

Restatement (Second) of Torts §433A (1965) provides as follows:

"(1) Damages for harm are to be apportioned among two or more causes where

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm."

The comments on subsection (1) above, related to "distinct harms," read as follows:

"Distinct harms. There are other re-

sults which, by their nature, are more capable of apportionment. If two defendants independently shoot the plaintiff at the same time, and one wounds him in the arm and the other in the leg, the ultimate result may be a badly damaged plaintiff in the hospital, but it is still possible, as a logical, reasonable, and practical matter, to regard the two wounds as separate injuries, and as distinct wrongs. The mere coincidence in time does not make the two wounds a single harm, or the conduct of the two defendants one tort. There may be difficulty in the apportionment of some elements of damages, such as the pain and suffering resulting from the two wounds, or the medical expenses, but this does not mean that one defendant must be liable for the distinct harm inflicted by the other. It is possible to make a rough estimate which will fairly apportion such subsidiary elements of damages.

　　***

　　It should be noted that there are situations in which the earlier wrongdoer may be

liable for the entire damage, while the later one will not. Thus an original tortfeasor may be liable not only for the harm which he has himself inflicted, but also for the additional damages resulting from the negligent treatment of the injury by a physician. *** The physician, on the other hand, has played no part in causing the original injury, and will be liable only for the additional harm caused by his own negligence in treatment." Restatement (Second) of Torts §433A, Comments b, c, at 435 (1965).

Section 433A of the Restatement (Second) of Torts has been superseded by section 26 of the Restatement (Third) of Torts: Apportionment of Liability (Restatement (Third) of Torts: Apportionment of Liability §26 (2000) (hereinafter Restatement (Third) of Torts)). While not yet formally adopted by our supreme court, we look to this section for whatever enlightenment it may provide.

Section 26 provides as follows:

"(a) When damages for an injury can be divided by causation, the factfinder first divides them into their indivisible component parts and separately apportions liability for

each indivisible component part ***.

(b) Damages can be divided by causation when the evidence provides a reasonable basis for the factfinder to determine:

(1) that any legally culpable conduct of a party or other relevant person to whom the factfinder assigns a percentage of responsibility was a legal cause of less than the entire damages for which the plaintiff seeks recovery and

(2) the amount of damages separately caused by that conduct. Otherwise, the damages are indivisible and thus the injury is indivisible. Liability for an indivisible injury is apportioned under Topics 1 through 4." Restatement (Third) of Torts §26 (2000).

The comments to the Restatement note most rules about dividing damages by causation were developed prior to the concept of comparative responsibility and most of these rules were developed in the context of indivisible injuries. Few courts have addressed the interaction between dividing damages by

- 19 -

causation and apportioning liability by responsibility.  Restate-ment (Third) of Torts §26, Comment <u>a</u>, at 321 (2000).  The comment further explains:  "Damages can be divided by causation when any person *** to whom the factfinder assigns a percentage of respon-sibility *** was a legal cause of less than the entire damages. ***  Divisible damages are first divided by causation into indivisible parts, and then each indivisible part is apportioned by responsibility."  Restatement (Third) of Torts §26, Comment <u>a</u>, at 320 (2000).  "The percentages of comparative responsibility for <u>each</u> component part add to 100 percent."  (Emphasis added.) Restatement (Third) of Torts §26, Comment <u>c</u>, at 321 (2000).  The comments further note the underlying policies behind the division by causation first, and then the subsequent apportionment of responsibility as follows:

> "No party should be liable for harm it did
> not cause, and an injury caused by two or
> more persons should be apportioned according
> to their respective shares of comparative
> responsibility."  Restatement (Third) of
> Torts §26, Comment <u>a</u>, at 321 (2000).

Thus, the two-step process, dividing injuries by causation and then apportioning responsibility to each component part, does not make a defendant liable for damages he did not cause, and it apportions liability among persons causing any component part

according to that person's comparative share of responsibility. Restatement (Third) of Torts §26, Comment d, at 323 (2000).

Comment (d) to section 26 discusses an alternative method of asking the jury to find the plaintiff's aggregate damages and then assigning a single set of percentages to all persons who caused at least part of the damage, taking into account evidence of causation and comparative responsibility. Restatement (Third) of Torts §26, Comment d, at 323 (2000). Comment j notes, however, a problem with a one-step process, i.e., it may result in a party being held liable for more damages than the party caused. Restatement (Third) of Torts §26, Comment j, at 326-27 (2000). "A party's comparative responsibility is distinct from the magnitude of the injury the party caused. When the factfinder is permitted to combine these two concepts to arrive at a single apportionment of liability, there is a risk that a party will be required to pay for damages it did not cause. Thus, the two-step process in [s]ubsection (a) is used unless the court determines that it is administratively infeasible." Restatement (Third) of Torts §26, Comment j, at 326-27 (2000).

As recognized in comment h, when a defendant is jointly and severally liable, he may be liable for more than his own percentage share of the damages. Restatement (Third) of Torts §26, Comment h, at 324 (2000). However, if a defendant did not

cause a portion of the damages, the defendant should not be liable therefor, regardless of joint and several liability.

Consider the following hypothetical. A woman is in a car accident. Her legs are shattered. She also suffers a dislocated finger. After many surgeries and medical treatment that did not breach the standard of care, amputation of both legs is necessary. The total cost of her medical care is $950,000. The same orthopedic surgeon who treated her legs failed to diagnose the problem with her finger. The problem with the finger is later discovered and requires surgery to repair. The cost of the medical care for the treatment of the dislocated finger is $50,000. The woman files a two-count complaint. The first count is directed only against the at-fault driver for the injuries to her legs and finger. The second count is directed at the orthopedic surgeon for only the injury to her finger.

A jury instruction like the one given to the jury in the instant case is used over the defendant physician's objection. The jury finds the driver and the physician 97.5% and 2.5% at fault, respectively, and awards plaintiff $2 million ($1 million medical and $1 million nonmedical) for her combined injuries. The total damages are not broken down between the injuries to her legs and the dislocated finger. In addition, the verdict does not show the physician bore no fault for the injuries to plaintiff's legs. The at-fault driver is judgment proof.

- 22 -

Because the jury's verdict failed to divide the damages between the injuries and attributed a percentage of fault to the physician for all of plaintiff's injuries (not just the finger injury), pursuant to section 2-1117 of the Code of Civil Procedure (735 ILCS 5/2-1117 (West 2008)), the physician would be responsible for paying the entire $1 million in medical expenses even though the physician's negligence had nothing to do with the $950,000 in medical expenses incurred for the treatment of the leg injuries. Section 2-1117 states in part: "in actions on account of bodily injury ***, based on negligence ***, all defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses." 735 ILCS 5/2-1117 (West 2008). Pursuant to the verdict form, the physician was found responsible for a percentage of all of the plaintiff's injuries, not just a percentage of the injury he played a part in causing. It would clearly be unfair to the physician to require him to pay medical expenses for an injury he had absolutely nothing to do with causing.

While the legislature clearly intended a minimally responsible tortfeasor to be jointly and severally liable for all medical expenses for an injury he partially caused, we find the legislature clearly did _not_ intend for a defendant to be responsible for medical expenses for an injury the plaintiff did not even _allege_ he caused in any part. As a result, the jury in-

- 23 -

struction and verdict form given in this case are contrary to Illinois law because they have the effect of making an individual responsible for damages he had absolutely nothing to do with causing.

Thus, under section 433A of Restatement (Second) of Torts and under section 26 of the Restatement (Third) of Torts, where it is feasible for the jury to assess damages by causation, this should be done first and then apportionment of responsibility for each component part would be assigned. Even where the magnitude of each indivisible component cannot be determined with precision, this does not mean the damages are indivisible. All that is required is a reasonable basis for division of the damages. Restatement (Third) of Torts §26, Comment f, at 323 (2000). As noted above, section 433A makes this same point. In this case, plaintiff's complaint provides the basis for dividing the damages. Plaintiff did not allege the medical defendants are in any way responsible for the injury to her forearm.

Consequently, the medical defendants' verdict form contained in their jury instruction No. 29A accurately reflected Illinois law on this issue. While we know the jury apportioned relative responsibility 75/25 (Franklin/medical defendants), we have no way of knowing how they divided the damages between the forearm and the finger. The medical defendants have no responsibility for the forearm fracture, but, under the verdict form

- 24 -

submitted by plaintiff, the medical defendants were assigned 25% of the responsibility for <u>all</u> damages, including damages for the forearm injuries.

Injuries to two separate body parts, only one of which includes an alleged successive claim of medical malpractice, are two separate and distinct injuries requiring separate treatment in a jury instruction. The existence of a single, indivisible injury is necessary to establish multiple defendants are jointly and severally liable. See <u>Board of Trustees of Community College District No. 508, County of Cook v. Coopers & Lybrand</u>, 208 Ill. 2d 259, 279-80, 803 N.E.2d 460, 472 (2003). Franklin and the medical defendants are not jointly and severally liable for plaintiff's injuries to her right forearm.

As the medical defendants are not liable for any damages in relation to plaintiff's right forearm, a separate itemization as to the damages resulting from that injury is necessary in order to assess the amount of Franklin's sole liability for them. Then, a separate itemization as to the damages resulting from the injury to plaintiff's right index finger is necessary, which, in addition, assesses the relative percentage of responsibility attributable to Franklin and the medical defendants. This is exactly what the medical defendants tendered in their instruction No. 29A.

Plaintiff argues in addition to giving the jury IPI

Civil (Supp. 2008) No. B45.03.A, the trial court instructed it with a modified version of Illinois Pattern Jury Instructions, Civil, No. 20.01 (2006) (hereinafter IPI Civil (2006) No. 20.01 (modified)), which included the following paragraphs as given:

"The plaintiff claims that she was injured and sustained damage, and that the defendant, Christine Franklin, was negligent in one or more of the following respects:

* * *

The plaintiff also claims that she suffered injury to her right index finger and sustained damage, and that defendant, Larry Nord, was professionally negligent in one or more of the following respects ***."

The jury was instructed that the medical defendants were alleged to be professionally negligent for the injury to plaintiff's finger, and no mention was made of the forearm injury with respect to Dr. Nord. The jury was also instructed Franklin should be held accountable for any and all injuries from the accident. However, these instructions do not cure the harm caused by the verdict form given to the jury. Without the separate itemization on the verdict form tendered by the medical defendants, there was no way provided for the jury to hold the medical defendants accountable for only the injuries they may

have caused to plaintiff's index finger.

Where a pattern jury instruction accurately reflects Illinois law, the trial court is required to use it. 177 Ill. 2d R. 239(a). Here, the court was not required to use IPI Civil (Supp. 2008) No. B45.03.A because it does not accurately reflect the law under the circumstances of this case. Indeed, the comments to the jury instruction state: "This computational verdict form is to be used in cases involving a single plaintiff and more than one entity which could or might have caused plaintiff's injury or damage ***." IPI Civil (Supp. 2008) No. B45.03.A, Committee Comment, at 38-39. Here it was undisputed the medical defendants did not cause any of the damage related to the forearm injury. The comment to IPI Civil (Supp. 2008) No. B45.03.A further states: "Because of the absence of case law on various issues, the committee does not yet have sufficient guidance from the courts to draw instructions which would expressly accommodate every situation." IPI Civil (Supp. 2008) No. B45.03.A, Committee Comment, at 41. Because the jury was not given the opportunity to divide the damages between the forearm injury and index finger injury, the trial court abused its discretion in giving plaintiff's instruction No. 9 and refusing the medical defendants' instruction No. 29A. The medical defendants are entitled to a new trial.

The dissent contends the attribution of fault to the

- 27 -

medical defendants in the amount of 25% comports with the evidence.  Even if this is a fair allocation of responsibility, the dissent fails to account for the impact joint-and-several-liability principles have on Dr. Nord.  Our earlier hypothetical demonstrates the inherently unfair nature of assigning a single set of percentages to all persons who caused part of the damages where the injuries are divisible, there are multiple defendants, and one or more defendants are clearly not responsible for some of the injuries.

It is absolutely clear the $307,000 award by the jury included the damages to the forearm.  Since the jury attributed 25% of the fault to the medical defendants (and not <u>less</u> than 25%), they are jointly and severally liable to the plaintiff for all of the damages.  735 ILCS 5/2-1117 (West 2008).  Thus, rather than exposure for the $76,750 the dissent contends comports with the damage to the index finger, the medical defendants share joint and several responsibility for the entire judgment, which includes damages awarded for the forearm injury.

Contrary to what the dissent states, the issue is <u>not</u> that Dr. Nord may be responsible for more than his assessed percentage of fault, but rather how he can be responsible in <u>any</u> percentage or amount for an injury he did not cause.  It is cold comfort that Dr. Nord now can assume the burden of trying to collect from Franklin that which he should never have been liable

for in the first place. Because plaintiff alleged only Franklin was responsible for the forearm injury, it should be plaintiff's burden to collect damages for that injury from Franklin.

However, plaintiff's counsel stated during oral argument plaintiff settled with Franklin for her insurance policy limits, gave her a release, and was seeking the remainder of the judgment from Dr. Nord. The record does not reflect the amount of Franklin's policy limits. If her policy limits were only $100,000, plaintiff could seek the remainder in damages from Dr. Nord pursuant to joint and several liability. In this case, as a result of the verdict form given to the jury, neither the parties, the trial court, nor this court has any way of knowing whether this verdict will result in Dr. Nord paying for damages for an injury plaintiff did not allege he caused in any way. Since the medical defendants ought not have <u>any</u> liability imposed or pay any damages for the forearm injury, their tendered instruction should have been given to the jury.

Because we are granting a new trial to the medical defendants, we offer some guidance on the remaining issues raised by those defendants in the event they should arise in a new trial.

### 2. <u>Injection</u> <u>of</u> <u>Insurance</u> <u>Into</u> <u>the</u> <u>Case</u>

The medical defendants argue the issue of insurance coverage was erroneously injected into the trial via a jury

instruction when there was no mention of insurance throughout the trial. They had filed a motion in limine prior to trial to prohibit any reference to insurance. The motion was granted and no party violated it.

Plaintiff offered her instruction No. 1, Illinois Pattern Jury Instructions, Civil, No. 3.03 (Supp. 2008) (hereinafter IPI Civil (Supp. 2008) No. 3.03), which states:

> "Whether a party is insured or not insured has no bearing on any issue that you must decide. You must refrain from any inference, speculation, or discussion about insurance.
>
> If you find for the plaintiff, you shall not speculate about or consider any possible sources of benefits the plaintiff may have received or might receive. After you have returned your verdict, the court will make whatever adjustments are necessary in this regard."

The instruction was given over objections from both the medical defendants and Franklin.

Plaintiff argued testimony in the trial indicated all of plaintiff's medical expenses, except for less than $1,000, had been paid. The trial court initially reserved ruling on the

instruction when first proffered by plaintiff.  The medical defendants argued insurance was not at issue and the instruction, while published by the Illinois Supreme Court Committee on Pattern Jury Instructions in Civil Cases (Committee), had yet to be approved by the supreme court.  The court later allowed the instruction without any further argument from the parties and did not give any reason for allowing the instruction.

IPI Civil (Supp. 2008) No. 3.03 was revised by the Committee in October 2007.  The revision replaced two prior instructions, Illinois Pattern Jury Instructions, Civil, No. 3.03 (2006) (hereinafter IPI Civil (2006) No. 3.03) and Illinois Pattern Jury Instructions, Civil, No. 30.22 (2006) (hereinafter IPI Civil (2006) No. 30.22).  The former IPI Civil (2006) No. 3.03 is the same as the first paragraph of the new IPI Civil (Supp. 2008) No. 3.03 with the addition of the words "or not insured" in the first line.  The second paragraph is the same as the former IPI Civil (2006) No. 30.22, which stated the old collateral-source rule.  The Notes on Use to the former IPI Civil (2006) No. 3.03 stated the instruction should "only be given at the request of the party whose liability insurance coverage has been disclosed or if the jury inquir[es] about liability insur- ance during deliberations."

The Notes on Use to IPI Civil (Supp. 2008) No. 3.03 state:  "The Committee believes that this instruction should be

- 31 -

given in all cases where insurance could play a role in the decision of the jury.  With the wide prevalence of liability insurance, medical insurance[,] or government benefits such as Medicaid or Medicare, many jurors question the role of insurance in contested accident, medical negligence[,] or other cases."

The medical defendants argue a jury instruction is approved or rejected for use only after it has been judicially questioned and considered (see Lange v. Freund, 367 Ill. App. 3d 641, 645, 855 N.E.2d 162, 167 (2006)) and the propriety of a trial court's determination is not conclusively determined by the recommendations and comments of the Committee.  Lange, 367 Ill. App. 3d at 645, 855 N.E.2d at 167.  IPI Civil (Supp. 2008) No. 3.03 has not been judicially reviewed.  However, the Lange case is inapposite to the situation here as the trial court in Lange injected its own instruction into the proceedings where the Committee comments recommended against giving such an instruction.  Lange, 367 Ill. App. 3d at 645, 855 N.E.2d at 167.  Even under such a circumstance, the reviewing court in Lange approved the giving of the court's instruction because it was appropriate in light of the closing argument made by plaintiff's counsel in that case.  Lange, 367 Ill. App. 3d at 645, 855 N.E.2d at 167. Further, we note if a trial court never gives a particular jury instruction because it has never been "judicially reviewed," as defendants suggest the law to be, there will never be an opportu-

- 32 -

nity to "judicially review" that particular instruction. The medical defendants' contention that an instruction promulgated by the IPI committee is not effective until approved by the supreme court is contrary to Supreme Court Rule 239(a). As noted above, a trial court is <u>required</u> to use an IPI instruction unless the court determines it does not accurately reflect the law. See 177 Ill. 2d R. 239(a).

Although the word "insurance" was not used during the trial here, testimony indicating the vast majority of plaintiff's sizable medical bills had been paid, while the evidence also showed she and her husband are of modest means, would lead to the inference insurance of some sort was used to pay those bills. While no mention or inference was made of the existence of insurance covering the medical defendants for their liability, the medical defendants were not unduly prejudiced as the wording of former IPI Civil (2006) No. 3.03 has been retained instructing the jury it does not matter in its deliberations whether a party was insured. No abuse of discretion in the giving of IPI Civil (Supp. 2008) No. 3.03 has been shown by the medical defendants, as the instruction accurately reflects Illinois law.

### 3. <u>Conflicting</u> <u>Instructions</u> <u>in</u> <u>Regard</u> <u>to</u> <u>Consideration</u> <u>of</u> <u>Expert</u> <u>Testimony</u>

Plaintiff offered her instruction No. 3, Illinois Pattern Jury Instructions, Civil, No. 3.08 (Supp. 2008) (hereinafter IPI Civil (Supp. 2008) No. 3.08), which states:

"You have heard a witness give opinions about matters requiring special knowledge or skill.  You should judge [his] testimony in the same way [that] you judge *** testimony from any other witness.  The fact that such person has given an opinion does not mean that you are required to accept it.  Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case."

The trial court gave this instruction over the objection of the medical defendants.  It is a new instruction, like IPI Civil (Supp. 2008) No. 3.03.

IPI Civil (Supp. 2008) No. 3.08 was given in addition to the medical defendants' instruction No. 25, Illinois Pattern Jury Instructions, Civil, No. 105.02 (2005) (hereinafter IPI Civil (2005) No. 105.02), to which there was no objection. (While the parties refer to Illinois Pattern Jury Instructions, Civil, No. 105.01 (2006) (hereinafter IPI Civil (2006) No. 105.01) in their briefs, it appears IPI Civil (2005) No. 105.02, which was withdrawn in 2006, was actually given at trial without objection by any party.)  The medical defendants' instruction No. 25 states:

"A physician who holds himself out as a spe-
cialist and provides service in this spe-
cialty must possess and apply the knowledge
and use the skill and care ordinarily used by
a reasonably well-qualified orthopedic sur-
geon under circumstances similar to those
shown by the evidence. The failure to do so
is professional negligence. The only way in
which you may decide whether a defendant
possessed and applied the knowledge and used
the skill and care which the law required
from him is from expert testimony presented
in the trial. You must not attempt to deter-
mine this question from any personal knowl-
edge that you have."

This instruction in regard to professional negligence tells the
jurors, in order to determine the standard of care, they must
rely on the opinion testimony of qualified witnesses and evidence
of professional standards and the jurors must not attempt to
determine the question from any personal knowledge they may have.

The medical defendants argued, both before the trial
court and here, the two jury instructions taken together would
result in the jury ignoring the testimony of expert witnesses, as
IPI Civil (Supp. 2008) No. 3.08 allows them to do, instead of

- 35 -

using only the testimony of expert witnesses to determine the professional standard of care appropriate in these circumstances. Jurors are not permitted to determine on their own the standard of care or whether the defendant has breached it. No case has suggested it is proper for jurors to decide issues of medical negligence based on their layperson's perspective, except in circumstances of gross negligence. The medical defendants argue, at a minimum, the giving of these two instructions together is confusing to the jury. At worst, it has the potential to allow jurors, rather than medical experts, to set the standard of care.

We disagree. IPI Civil (Supp. 2008) No. 3.08 applies to the weight to be given expert testimony on any topic. IPI Civil (2005) No. 105.02 (now incorporated into IPI Civil (2006) No. 105.01) is limited to the determination of the "standard of care" for health-care defendants. The two jury instructions do not conflict. Taken together, the jury was instructed in IPI Civil (2005) No. 105.02 it must rely on expert witness testimony to determine the applicable standard of care for the medical defendants, while IPI Civil (Supp. 2008) No. 3.08 told the jury it did not need to accept all expert opinions. The Notes on Use to IPI Civil (Supp. 2008) 3.08 state it is to be used in conjunction with IPI Civil (2006) No. 105.01 (dealing generally with professional-negligence cases, replacing IPI Civil (2005) No. 105.02, which has been withdrawn). Thus, if the jury determined

there were not any believable expert opinions supporting a standard-of-care determination, plaintiff would not have proved her case and the jury would so find.  The instructions are neither incompatible nor contradictory.  See also <u>Sherman Health Systems</u>, 387 Ill. App. 3d at 407-08, 900 N.E.2d at 1218 (finding IPI Civil (2006) No. 105.01 accurately states the law).  But <u>cf.</u> <u>Buka</u>, 386 Ill. App. 3d at 185-86, 897 N.E.2d at 902 (finding IPI Civil (2006) No. 105.01 does not accurately state the law).

B. Evidence Qualified Radiologists Did Not Diagnose
Plaintiff's Dislocated Finger

Plaintiff was first seen at Memorial where X rays were taken.  Dr. Haag, a clinical radiologist, read those X rays.  In his report, he did not identify any dislocation of plaintiff's finger.  Dr. Haag was a defendant in this case but was dismissed right before the start of the trial.

Plaintiff was again x-rayed following surgery in Bloomington.  Dr. Cooley, a board-certified radiologist, reviewed the X rays and did not detect any dislocation of her finger.  Both Dr. Haag's and Dr. Cooley's reports were part of plaintiff's medical records admitted into evidence by agreement.  The medical defendants contend if either Dr. Haag or Dr. Cooley had identi-fied the dislocation, it would have been treated by them in a timely manner.  A significant part of the medical defendants' defense was the unusual presentation of plaintiff's dislocated finger and, thus, the difficulty in detecting the dislocated

- 37 -

finger in the X rays. They argue radiologists are even more qualified to read X rays than orthopedic surgeons and, therefore, the fact neither Dr. Haag nor Dr. Cooley detected the finger dislocation in the X rays was highly relevant.

The trial court refused to allow reference to Dr. Haag's X-ray report in the opening statement of the medical defendants; refused to allow them to cross-examine Dr. Rotman using Dr. Haag's and Dr. Cooley's X-ray reports; and excluded some of Dr. Cooley's testimony. The medical defendants argue, taken together, these rulings deprived them of a fair trial. They contend the X-ray reports are part of plaintiff's medical history and cannot be properly excluded.

They argue further, Dr. Cooley testified at trial that the dislocation of plaintiff's finger was visible on the same X-rays he looked at in the course of plaintiff's treatment but failed to visualize initially. Plaintiff also presented testimony from Dr. Rotman the dislocation was visible on the X-rays taken in early 2004 at Dr. Nord's office. The medical defendants argue the court kept from the jury facts contained in the medical records that showed Drs. Haag and Cooley did not identify the dislocation on those same X rays.

Thus, the medical defendants argue the trial court's rulings eliminating the mention of Dr. Haag at trial and severely limiting Dr. Cooley's testimony denied them the opportunity to

fairly present their theory of the case and were prejudicial error.

"'Evidentiary rulings are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.'" People v. Johnson, 385 Ill. App. 3d 585, 596, 898 N.E.2d 658, 669 (2008), quoting People v. Purcell, 364 Ill. App. 3d 283, 293, 846 N.E.2d 203, 211 (2006). Abuse of discretion is found only where the trial court's rulings are arbitrary, fanciful or unreasonable, or where no reasonable person would take the view adopted by the court. Purcell, 364 Ill. App. 3d at 293, 846 N.E.2d at 211.

We note, first, the medical defendants are incorrect in stating no evidence was before the jury in regard to Dr. Cooley missing the diagnosis of the dislocated finger. Dr. Cooley admitted in his testimony the X-ray report he authored in regard to the December 13, 2003, X ray made no mention of the fracture dislocation of plaintiff's right index finger because he did not visualize the fracture dislocation at that time. He also stated the training a radiologist receives in interpreting X rays is greater than that of an orthopedic surgeon, which supports the medical defendants' theory of the case. In fact, the trial court cited this when the medical defendants wanted to use Dr. Haag's findings, concluding it would be duplicative and they could argue their defense theory based on Dr. Cooley's testimony.

The problem with the defense theory, however, which makes the missing reports of finger dislocation by the radiologists of little relevancy, is the fact the radiologists were not asked to look for a dislocation but to confirm the right forearm fracture. Dr. Cooley testified it was much easier for radiologists to spot things on film when they were looking for them. Additionally, neither radiologist saw plaintiff in person, and Dr. Nord, rather than rely on a radiologist's report, read the X rays himself. In addition, what defendants really sought to do was argue, "If the radiologists didn't see it, then the orthopedist was not negligent for missing it." In essence, defendants wanted to argue defendants met the standard of care because two radiologists did not report the dislocation. However, no professional opinion testimony was offered to support this conclusion. As noted above, the jury was required to rely on expert testimony to determine the standard of care.

The medical defendants were allowed to argue the presentation of plaintiff's dislocation was unusual and, thus, difficult to see on the X rays, and, in fact, it was missed by a radiologist before Dr. Nord saw her. However, Dr. Nord treated plaintiff extensively over a period of several months. Evidence showed at least 13 office visits between plaintiff and Dr. Nord. The radiologists may have missed the dislocation on the X rays, but Dr. Nord was presented with a patient who had a badly swollen

hand and testified she reported pain in her hand and fingers with every office visit. Dr. Nord was also able to palpate plaintiff's hand on each visit. Although Dr. Nord denies the reports of pain and there is no record of them in his office notes, Dr. Nord was presented with many more opportunities and reasons to review the X-ray film, looking for injuries besides the forearm fracture, than were the radiologists. Thus, comparing the radiologists' reports which missed the finger dislocation with the opportunities Dr. Nord had to diagnose the dislocation is similar to a comparison of apples and oranges, making the radiology reports, for the most part, irrelevant. (This would be similar to Franklin offering testimony that a professional race-car driver also failed to yield at the same intersection where this collision occurred. That someone with arguably greater skill was also negligent is not a legitimate defense.) Further, Dr. Nord did not rely on the radiologist's report prior to performing the initial surgery. He read the X rays taken in Springfield himself, as he does with all of his orthopedic patients.

Dr. Cooley's testimony was presented at trial via an evidence deposition. The excluded portion of his testimony pertained to the standard of care for a well-qualified radiologist and was not relevant to this case.

The medical defendants were not kept from arguing their

defense to the jury, and only irrelevant evidence was kept from the jury by the trial court.  We find no abuse of discretion.

C. Errors in Opening Statement and Closing Arguments

1. Mention of Plaintiff's Miscarriage in Opening Statement

Although plaintiff incurred a miscarriage after the automobile accident, no recovery was sought for it.  Nonetheless, during opening statement, plaintiff's counsel told the jury plaintiff had a miscarriage after the accident.  The medical defendants contend this was an attempt to create sympathy and prejudice in the minds of the jurors.

Objection was made by Franklin's counsel but not counsel for the medical defendants.  The objection was sustained and the medical defendants made a motion in limine to bar further mention of the miscarriage.  The motion was granted and the parties abided by the ruling.

Because no objection was made by the medical defendants nor did they join in or adopt Franklin's objection, the issue could be considered forfeited.  See Brown v. Timpte Inc., 137 Ill. App. 3d 1053, 1062-63, 485 N.E.2d 488, 494 (1985).  However, as this case is being reversed and remanded, we will consider this issue.

An opening statement is intended to inform jurors of the nature of the action and to provide an outline of what counsel expects admissible evidence at trial to show so the

jurors can better understand testimony they will hear during trial, but no statement may be made in opening which counsel does not intend to prove. Gillson v. Gulf, Mobile & Ohio R.R. Co., 42 Ill. 2d 193, 196-97, 246 N.E.2d 269, 272 (1969). Statements made by counsel in opening statement are improper if they are not in good faith and are prejudicial. Surestaff, Inc. v. Open Kitchens, Inc., 384 Ill. App. 3d 172, 174, 892 N.E.2d 1137, 1140 (2008).

Plaintiff argues the comments of counsel were factually accurate as the Memorial records reflect plaintiff was pregnant. Further, Dr. Nord was expected to introduce the testimony of Dr. Pickett by means of video evidence deposition. His testimony at the deposition included this question and answer:

"Q. Okay. What was the next thing you did?

A. Well, seeing the patient's complaint, apparently[--]it's patient had a history that she is five weeks pregnant and I ordered a pregnancy test and a CBC and probably simultaneously with that obtained consultation from orthopedic service."

After the medical defendants' motion in limine, this testimony was stricken from the deposition. But plaintiff argues she had no way of knowing this at the time her counsel made his opening

- 43 -

statement.

As plaintiff never sought recovery of damages as a result of her miscarriage, it is wholly irrelevant and prejudiced the medical defendants. Plaintiff's counsel had no reason to tell the jury about it in opening statement. It was simply a subtle attempt to appeal to the emotions of the jury, which constitutes error. See First National Bank of La Grange v. Glen Oaks Hospital & Medical Center, 357 Ill. App. 3d 828, 833, 829 N.E.2d 378, 385 (2005).

Even without the existence of a motion in limine, comments concerning plaintiff's miscarriage have no place in statements by counsel.

### 2. Plaintiff's Counsel Stated During Closing Argument Plaintiff Did Not Have the Burden of Separating Damages for Arm and Finger

During closing argument, plaintiff's counsel quoted the jury instruction defining "proximate cause" and then went into the complained-of argument:

"When I use the expression, quote, 'proximate cause,' unquote, I mean any cause which in the natural and ordinary course of events produced the [p]laintiff's injury. It need not be the only cause, nor the last, nor the nearest cause. It is sufficient if it con- curs with some other cause acting at the same

- 44 -

time which in combination with it causes the injury.

In other words, [plaintiff] does not have the obligation to try to parse her injury. She does not have the obligation, the law does not place a burden on her, to demonstrate which of these injuries is due exclusively to a motor vehicle accident, how much of it is due to Dr. Nord's negligence. The [p]laintiff does not have that burden, because proximate cause is defined, and both of these [d]efendants contributed and proximately caused the injuries that we now have."

The medical defendants objected to this argument as a misstatement of the law, implying plaintiff did not have the burden to show proximate cause but defendants had that burden. The objection was sustained.

Plaintiff's counsel then continued his argument: "Yeah, I didn't say we don't have the burden to show what proximate cause is, what I said was [p]laintiff doesn't have the burden to separate the injuries out and to separate the medical bills out. That's what I am saying."

The medical defendants objected again, arguing plaintiff did have

the burden to separate her medical bills for each injury.  The objection was sustained.

The medical defendants argue the law is clear, even if plaintiff demonstrated they had breached the standard of care with respect to a late diagnosis of the dislocated finger, they could not be held responsible for injuries resulting from plaintiff's arm fracture.

The purpose of closing argument is to draw reasonable inferences from the evidence and assist the jury in arriving at a verdict based on the law and the evidence.  Copeland v. Stebco Products Corp., 316 Ill. App. 3d 932, 948, 738 N.E.2d 199, 213 (2000).  The medical defendants argue an appeals court has the discretion to grant a new trial based on improper closing argument.  See Regan v. Vizza, 65 Ill. App. 3d 50, 54, 382 N.E.2d 409, 412 (1978).  However, where the trial court sustains an objection to improper argument by counsel, any error is considered cured and, if the trial was fair as a whole and the evidence sufficient to support the verdict, the judgment will not be reversed on appeal.  See Lecroy v. Miller, 272 Ill. App. 3d 925, 933-34, 651 N.E.2d 617, 622 (1995).

First, we note plaintiff did not "repeatedly" argue to the jury she did not have the burden of separating her damages as argued by the medical defendants.  However, as noted in our discussion concerning the erroneous verdict form used in this

- 46 -

trial, plaintiff did have the burden to separate her damages between her forearm and her index finger.  Thus, her counsel's argument was objectionable and the trial court was correct to sustain the medical defendants' objection to it (even though it erroneously refused the medical defendants' proffered jury-instruction verdict form).

### 3. Franklin's Counsel Questioned Dr. Nord Operating on Plaintiff's Hand

Counsel for Franklin argued in closing argument:

"Another problem I have is you know, this thing goes on for six months, and the physical therapist does diagnose it by palpation the first time she sees the patient.  What does Dr. Nord do?  He operates on the finger. He is not a hand surgeon.  Why does he operate on that hand and then later send her to the expert, Dr. Lee?"

Counsel for the medical defendants moved to strike this argument as not relevant.  Franklin's counsel contended this was not argument but only a statement.  The trial court stated it was an argument but overruled the objection.

Franklin's counsel then stated:

"As I said, there's a lot of issues and a lot of speculation that we don't need to get into, I'm just pointing out the facts."

- 47 -

The medical defendants contend Franklin's counsel knew this argument was objectionable. Plaintiff's counsel attempted to question Dr. Nord during the trial about why he performed the first hand surgery instead of sending plaintiff to a specialist immediately. The trial court sustained the medical defendants' objection. Plaintiff's counsel argued at that time the question went to the credibility of Dr. Nord because medical-malpractice defendants often tried to correct the problem without anyone else ever knowing about it. The medical defendants argued no expert testified anything was wrong with Dr. Nord's surgery on plaintiff's hand nor were any allegations made to that effect. In fact, Dr. Rotman, plaintiff's expert, stated he had no criticisms of Dr. Nord's surgeries. He did not state the opinion Dr. Nord should have referred plaintiff to Dr. Lee earlier.

Although Franklin's cross-claim did contain an allegation Dr. Nord not only failed to properly diagnose plaintiff's hand injury, but also failed to properly treat the injury, no evidence was presented at trial as to the appropriate standard of care for hand surgery and whether Dr. Nord, an orthopedic surgeon, breached that standard of care. Counsel's follow-up statement to the jury, that there was a lot to speculate about but he was just stating the facts, did not negate the suggestion Dr. Nord may not have properly treated plaintiff's hand injury once he did diagnose it. As no evidence supported counsel's

"speculation," it was error to include it in his closing argument and the medical defendants' objection to it should have been sustained.

### III. CONCLUSION

For the above reasons, we reverse the trial court's judgment and remand the cause for a new trial.

Reversed and remanded.

STEIGMANN, J., concurs.

MYERSCOUGH, P.J., dissents.

Plaintiff's No. 9:

**VERDICT FORM A**

We, the jury, find for Dawn Auten and against the following defendants:

Christine Franklin                                    Yes _____ No _____

Larry Nord, M.D. and
Central IL Orthopaedic Surgery              Yes _____ No _____

We further find the following:

First:  That the total amount of damages suffered by Dawn Auten as a proximate result of the occurrence in question is $_____, itemized as follows:

The reasonable expense of necessary medical
care, treatment, and services received              $_____

The disfigurement resulting from the injury         $_____

The pain and suffering experienced and
reasonably certain to be experienced in the
future as a result of the injuries                  $_____

The disability experienced and reasonably
certain to be experienced in the future             $_____

PLAINTIFF'S TOTAL DAMAGES:                          $_____

Second: Assuming that 100% represents the total combined fault of all persons or entities whose fault proximately caused Dawn Auten f/k/a/ Dawn Barnett's injury, including any defendant whom you have found liable, we find the percentage of fault attributable to each as follows:

(a)  Christine Franklin                                     _____%

(b)  Larry Nord, M.D./Central IL Orthopaedic Surgery _____%

TOTAL                                                       100%

If you find either defendant not liable to the plaintiff, then you should enter zero (0) as to that defendant.

Third:  We award Dawn Auten recoverable damages in the

- 50 -

amount of $_____.

Medical defendants' No. 29A:

## VERDICT FORM A

Does the jury find for Dawn Auten and against Christine Franklin for injuries which the plaintiff suffered to her right forearm?

Christine Franklin                 Yes _____        No _____

We find the total amount of damages suffered by Dawn Auten as a proximate result of the injuries to her right forearm is $_____, itemized as follows:

The disfigurement resulting from the
injury:                                                        $_____

The disability experienced and rea-
sonably certain to be experienced in
the future:                                                    $_____

The pain and suffering experienced
as a result of the injuries:                                   $_____

The reasonable expense of necessary
medical care, treatment and services          $_____-
received:                                     __

PLAINTIFF'S TOTAL DAMAGES FOR INJU-
RIES TO HER RIGHT FOREARM:                                     $_____

Does the jury find for Dawn Auten and against the following defendant(s) for injuries which the plaintiff suffered to her right index finger?

Christine Franklin                 Yes _____        No _____

Larry Nord, M.D./Central IL
Orthopedic Surgery, S.C.           Yes _____        No _____

We find the total amount of damages by Dawn Auten as a proximate result of the injuries to her right index finger is $_____, itemized as follows:

| The disfigurement resulting from the injury: | The reasonable expense of neces- sary medical care, |
| --- | --- |
| The disability experienced and rea- sonably certain to be experienced in the future: | treatment and ser- vices received: |
| The pain and suffering experienced as a result of the injuries: $_____ | |

$_____

$_____

$_____

$_____

PLAINTIFF'S TOTAL DAMAGES FOR INJU-
RIES TO HER RIGHT INDEX FINGER:

Assuming that 100% represents the total combined negligence
of all persons whose negligence proximately caused Dawn Auten's
right index finger injury, we find that the percentage of negli-
gence attributable to each as follows:

Christine Franklin                                    \_\_\_\_\_%

Larry Nord, M.D./Central IL Orthopedic
Surgery, S.C.                                         \_\_\_\_\_%

TOTAL                                                 100%

*(Instructions to Jury: If you find any defendant not liable to
the plaintiff for her finger injury, then you should enter a zero
percent (0%) as to that person or persons.)*

PRESIDING JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent.  I disagree that reversible error occurred in closing arguments.  Further, I believe Drs. Cooley's and Haag's testimony should have been allowed in full but do not believe the court's ruling constituted reversible error.  More important, the trial court did not abuse its discretion by giving IPI Civil (Supp. 2008) No. B45.03.A, the jury was not misled by this instruction, and the medical defendants were not prejudiced by this instruction.  I would affirm.

The given instruction accurately stated the law.  <u>Buka</u>, 386 Ill. App. 3d at 179, 897 N.E.2d at 896 (a trial court must use the IPI instruction unless it does not accurately state the law).  The instructions clearly directed the jury to determine the total amount of damages suffered by plaintiff and to apportion each defendant's degree of fault:

> "If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate her ***."

> "[Y]ou must apportion damages by determining the relative degree of fault, if any, of each person *** named or described on the verdict form."

The instructions clearly established that the rights of defen-

dants, Franklin and Nord, are separate and distinct from one another:

> "The rights of the defendants, Christine Franklin[] and Larry Nord, M.D., are separate and distinct from one another.  Each defendant is entitled to a fair consideration of his or her own defense and you will decide each defendant's case separately as if it were a separate lawsuit.  Each defendant's case must be governed by the instructions applicable to that case."

Though proposed instruction No. 29A introduced by defendant Nord more fully states the law, that is not the test here.

Even if we accept the majority's proposition that the IPI instruction was faulty and did not accurately state the law, that instruction is still appropriate as it did not mislead the jury or result in prejudice to the medical defendants, a prerequisite for reversal.  See People v. Rodriguez, 387 Ill. App. 3d 812, 821, 901 N.E.2d 927, 936 (2008) (the reviewing court will not reverse, even if the instruction was faulty, unless the instruction "clearly misled the jury and resulted in prejudice to the appellant").  Indeed, verdict form A clearly provided the jury opportunity to find each defendant responsible for none, part, or all of plaintiff's injuries:

"We, the jury, find for Dawn Auten and against the following defendants: Christine Franklin[:] Yes ___ No ___[;] Larry Nord, M.D. and Central IL Orthopaedic Surgery[:] Yes ___ No ___[.] *** Assuming that 100% represents the total combined fault of all persons or entities whose fault proximately caused Dawn Auten f/k/a Dawn Barnett's injury, including any defendant whom you have found liable, we find the percentage of fault attributable to each as follows: (a) Christine Franklin ___% (b) Larry Nord, M.D./Central IL Orthopaedic Surgery ___%[.]"

Verdict Form B allowed a determination on the counterclaim filed by defendant Nord against defendant Franklin:

"We, the jury, find for defendant, Larry Nord, M.D.[,] and Central Illinois Orthopedic Surgery, S.C.[,] and against the plaintiff and [c]ounter[-p]laintiff, Christine Franklin."

Though no separate verdict form was provided with regard to the counterclaim filed by Franklin against Nord, the jury instructions nevertheless provided more than adequate direction to make the jury aware of Franklin's counterclaim, and the

simplified verdict form that was given allowed sufficient oppor-
tunity for the jury to make a determination as to all claims and
counterclaims.  Additionally, the IPI comments reaffirm that IPI
Civil (2006) B45.03.A should be given in this case:

> "This verdict form is identical to IPI.
> B45.03.A with the exception of the addition
> of paragraph 'Second' providing for findings
> for or against third-party defendants.  <u>For</u>
> <u>cases</u> <u>involving</u> <u>contribution</u> <u>counterclaims</u>
> <u>among</u> <u>defendants,</u> <u>tried</u> <u>concurrently</u> <u>with</u> <u>the</u>
> <u>plaintiff's</u> <u>claim,</u> <u>use</u> <u>B45.03A.</u>  For contri-
> bution claims which involve third-party com-
> plaints use this instruction."  (Emphasis
> added.)  Illinois Pattern Jury Instructions,
> Civil, No. 600.14, Notes on Use, at 627-28
> (2006).

I recognize plaintiff's counsel argued, during closing
argument, that plaintiff did not have the burden of demonstrating
which of her injuries were due exclusively to the motor-vehicle
accident and which were due to the medical defendants.  However,
defense counsel objected to this line of argument, and the objec-
tion was sustained.  Nevertheless, plaintiff ultimately argued
correctly, and the jury was properly instructed to make a deter-
mination about the doctor's failure to diagnose the finger, not

the forearm:

"The plaintiff claims that she was injured and sustained damage, and that the defendant, Christine Franklin, was negligent in one or more of the following respects:

(a) *** [F]ailing to yield ***;

(b) Failing to keep a proper lookout for other traffic;

(c) Failing to keep the vehicle she was operating under proper control.

The plaintiff further claims that one or more of the foregoing was a proximate cause of [her] injuries.

The defendant, Christine Franklin, denies that she was negligent.

* * *

The plaintiff also claims that she suffered injury to her right index finger and sustained damage, and that defendant, Larry Nord, was professionally negligent in one or more of the following respects:

(a) Failing to perform an adequate and thorough examination of plaintiff;

(b) Failing to order the appropriate

[X]-rays;

(c) Failing to diagnose the dislocation

of plaintiff's index finger; and

(d) Failing to properly treat plain-

tiff's dislocated index finger.

The plaintiff further claims that one or more of the foregoing was a proximate cause of her injuries.

Defendant, Larry Nord, denies that he did any of the things claimed by the plaintiff, denies that he was negligent, and denies that any claimed action or omission on his part was a proximate cause of plaintiff's injuries.

* * *

Defendant, Christine Franklin, counter-claims that she is entitled to contribution from co[d]efendant, Larry Nord, for one or more of the following acts:

(a) Failing to perform an adequate and

thorough examination of plaintiff;

(b) Failing to order the appropriate

[X]-rays;

(c) Failing to diagnose the dislocation

of plaintiff's index finger; and

(d) Failing to properly treat plain-

tiff's dislocated index finger.

Defendant, Larry Nord, denies that he did any of the things claimed by Christine Franklin, denies that he was negligent, denies that he contributed to plaintiff's injuries, and denies that any claimed act or omission on his part was a proximate cause of the plaintiff's claimed injuries.

Defendant, Larry Nord, counterclaims that he is entitled to contribution from defendant, Christine Franklin, for one or more of the following negligent acts and/or omissions:

(a) Failing to operate the automobile

in a safe and cautious manner;

(b) Failing to keep a safe and careful

lookout for other traffic;

(c) Failing to stop the automobile or

to apply the brakes on the automo-

bile in time to avoid colliding with

another automobile;

(d) *** [F]ailing to yield ***.

Christine Franklin denies that she was negligent."

In these instructions, the trial court specifically instructed the jury that plaintiff claimed she suffered injury to her right index finger due to the medical defendants' negligence, and the reviewing court must assume the jury followed the jury instructions. See, e.g., People v. Platter, 89 Ill. App. 3d 803, 820, 412 N.E.2d 181, 194 (1980) ("The jury was properly instructed on the crime of involuntary manslaughter, and we will assume that the jury followed the instructions that were given").

The jury was also correctly instructed that defendant Franklin was responsible for damages resulting from Nord's actions.

"If a defendant negligently causes injury to the plaintiff, then the defendant is liable not only for the plaintiff's damages resulting from that injury, but is also liable for any damages sustained by the plaintiff arising from the efforts of health[-]care providers to treat the injury caused by the defendant[,] even if that health[-]care provider was negligent."

See Illinois Pattern Jury Instructions, Civil, No. 30.23 (2006).

Further, when apportioning the degree of fault, the

jury clearly considered that the medical defendants were only responsible for the injury to plaintiff's right index finger caused by their negligence. In fact, the evidence supports the jury's verdict that the medical defendants were responsible for 25% of plaintiff's damages. According to plaintiff's exhibit F, the medical bills related to treatment for (1) the arm injury alone totaled $24,252.42, (2) the finger injury alone totaled $47,035.14, and (3) the arm and finger injury together totaled $36,500, for a grand total of $107,788.54 in medical bills. (The jury awarded $107,000 for the reasonable expense of necessary medical care.) Moreover, the evidence indicated that the residual damage to the right index finger was greater than the injury to her arm. Additionally, plaintiff had significant pain and dysfunction associated with the injury to her right index finger, while she had little discomfort or dysfunction with her arm.

Without even taking into account the medical bills for the arm and finger injuries, the medical expenses plaintiff incurred solely for the injury to the right index finger ($47,035.12) are approximately twice as high as the medical expenses for the arm injury alone ($24,252.42). (Combined medical expenses for the arm and finger injuries totaled $36,500.98.) Yet, the jury assessed against the medical defendants 25% of plaintiff's total damages (25% of $307,000), which totals $76,750. That amount comports with the evidence of injury to the index

finger for which the medical defendants were responsible.

The jury's verdict clearly does not suggest the jury was misled by the evidence, closing argument, or IPI Civil (Supp. 2008) No. B45.03.A.  Indeed, Illinois Supreme Court Rule 239(a) states the IPI Civil are sufficient and not misleading: "Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law *** the IPI instruction shall be used ***."  177 Ill. 2d R. 239(a).  As "[a] reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless [the instructions] clearly misled the jury and resulted in prejudice to the appellant," the trial court's ruling should be affirmed.  Schultz v. Northeast Illinois Regional Commuter R.R. Corp., 201 Ill. 2d 260, 274, 775 N.E.2d 964, 973 (2002).

The majority raises the unspoken spectre in this case-- the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 through 100/5 (West 2008))--and the fact defendant Nord may be responsible for more than his assessed percentage of fault due to defendant Franklin's unknown settlement for policy limits referenced on oral argument.  However, that matter is not before this court and does not justify reversing an appropriate jury award.  The jury made the appropriate calculations and allocations on this record.  This was not "rocket science"--the jury considered the evidence and correctly apportioned liability between the parties.

We should not now second-guess the jury's abilities with hypotheticals and evidence not in the record.

The majority argues defendant Nord ought not have liability for the forearm. We do not know that he does. That is a matter between the joint tortfeasors and is the reason for the Contribution Act. 740 ILCS 100/2(a), (b) (West 2008). Defendant Nord has a right to an offset for the amount of defendant Franklin's settlement. Franklin must obtain from the trial court approval of the settlement as being in good faith before she can be released and dismissed. That is defendant Nord's protection here, as set forth by the legislature in the statute. This is not a wrong that needs to be addressed by this court based on the record and these instructions.

It is also of no matter that the settlement was reached after the jury verdict. See Ziarko v. Soo Line R.R. Co., 161 Ill. 2d 267, 286, 641 N.E.2d 402, 411 (1994) (holding that, because "jury verdicts may be modified, reduced, or vacated on post[]trial motion or on appeal," the court "do[es] not believe *** the parties should be obligated to accept the verdict amount as the final determination of the defendants' common liability to the plaintiff to be reflected in a post-judgment settlement agreement"). Nor does plaintiff's settlement with defendant Franklin hinder plaintiff's right to enforce the judgment against defendant Nord. See Henry v. St. John's Hospital, 138 Ill. 2d

533, 541, 563 N.E.2d 410, 414 (1990) (holding "that an injured party does not waive the right to enforce a judgment against a jointly and severally liable tortfeasor by settling with another joint tortfeasor").

Concededly, the proposed instruction is a good one, and it would not have been error for the trial court to have given that instruction. However, the instruction given was also proper, and the court did not abuse its discretion by giving the IPI instruction. For these reasons, I would affirm.